CROWN CORK & SEAL CO. OF BALTIMORE CITY v. STANDARD STOPPER CO. et al.

(Circuit Court of Appeals, Second Circuit. February 28, 1905.)

1. PATENTS—SENIORITY BETWEEN PATENTS OF SAME DATE—NUMBERS.
    Where two patents are issued on the same day by the Patent Office, and there is no other evidence of seniority between them than such as appears from their several numbers, the earlier in number must be regarded the senior and the earlier in publication.

2. SAME—INVENTION—BOTTLE STOPPERS.
    The Painter patents, Nos. 468,258 and 582,762, both for bottle sealing devices, are void for lack of patentable novelty, in view of the prior art, which contained all the elements of the combinations described therein used to perform the same functions.

    Coxe, Circuit Judge, dissenting in part.

Appeal from the Circuit Court of the United States for the Southern District of New York.

J. Q. Rice and F. H. Betts, for appellants.

Wetmore & Jenner and Robert H. Parkinson (John C. Rose, on the brief), for appellee.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

WALLACE, Circuit Judge. This is an appeal by the defendant from a decree for the complainant adjudging the validity and the infringement of two patents for "Bottle Sealing Devices" granted to William Painter, and by him assigned to the complainant. The first of the two patents, No. 468,258, was applied for June 16, 1890,

and was granted February 2, 1892. The second, No. 582,762, was applied for December 8, 1892, and was granted May 28, 1897. Of the nine claims of the earlier patent, the first three only are in controversy. The later patent contains two claims, and both are in controversy. The assignments of error challenge the validity of all the claims for want of patentable novelty, and assert that, if their validity should be sustained, they have not been infringed by the defendant.

Besides the patents in suit, two other patents were granted to Painter for bottle sealing devices—No. 468,226, which was applied for May 19, 1891, and granted February 2, 1892, and No. 468,259, which was applied for November 5, 1889, and granted February 2, 1892. Thus it will be seen that three patents were granted to Painter upon the same day, and that No. 468,226 was the patent earliest granted, that No. 468,259 was the earliest applied for, and that the application for 468,258 was of earlier date than that of No. 468,226. No. 468,226 shows in its drawings a bottle sealing device which is substantially identical with some of those shown in No. 468,258. No. 468,259 also shows in its drawings a bottle sealing device which is substantially identical with some of those shown in No. 468,258. The bearing of these patents upon the question of the validity of the first of the patents in suit will be considered hereafter.

The patents of Painter all relate to a metallic sealing cap for use upon glass bottles, with a cork or plug or any suitable sealing medium applied at or in the mouth of the bottle, which can be pressed down upon the neck of the bottle and locked by pressure into fixed contact, to make a strong and tight seal, and keep the contents of the bottle intact, and which can be readily removed when it is intended to open the bottle. It is important that such caps be sufficiently flexible to permit them to be used upon bottles notwithstanding such variations in size and shape as ordinarily exist in bottles intended to be of the same size and shape, and to permit them to be readily removed, and yet be sufficiently stiff to maintain their position when locked. It is also important that they be so inexpensive as to justify destroying them after a single use. Preferably, they are intended for use upon bottles in which, instead of an ordinary cork or plug, the closure is effected by a cover extending over the mouth or the top of the neck of the bottle, sometimes called a sealing disk, and composed of a layer of cork, or some other yielding material, which can be compressed so tightly over the orifice as to prevent any escape of the liquid or the gases of the contents. One of the earliest sealing caps of the prior art is shown in a patent to Whittlesey granted May 19, 1863, which was made by "striking up a flat piece of metal into a cap having a flat top, slightly tapering sides, and corrugated flange edge." Later in the prior art they were constructed with sides or flanges, to enable them to be locked around an annular shoulder on the bottle near its orifice, or to be locked by compression within an annular groove in the bottle near its orifice.

Patent No. 468,258 contemplated an improvement in the sealing caps previously used. The specification contains the following recitals:

"Metallic sealing caps have heretofore been devised and largely used, and these have involved great variety in the character of the metal employed, and in the form and construction of their pendent flanges; but my sealing cap, in its best form, differs from all others of which I have knowledge, in that it has a pendent flange, which is unbroken or continuous, but is nevertheless resilient both radially and circumferentially, and is therefore contractible and expansible, and capable of adapting itself and of being adapted to the largest as well as the smallest head in a set of bottles; it being well known that bottles of the same size are unavoidably more or less varied in the external dimensions of their heads. * * * Prior sealing caps or 'capsules' composed of thin soft metal have had continuous or unbroken pendent flanges; but they are not resilient, although capable of some slight distension, as when forced upon a bottle head. Other prior sealing caps have been composed of harder metals, and they have had continuous or unbroken flanges, which, unlike the capsules, are practically incapable of being distended upon a bottle head, and though, like the 'capsules,' they are capable of distension on a diametric line, they are not resilient or springy circumferentially; and hence, when distended diametrically on one line, the flange correspondingly contracts on a line at right angles to the line of distension, whereas the continuous or unbroken flange of my cap, in its best form, may be extended diametrically without this corresponding contraction because of its circumferential resiliency and its contractile and expansible capacities, all of which are secured by me, because, in the best form of my cap, the flange is corrugated substantially throughout all, or at least a considerable portion, of its depth, in lines substantially parallel with the axial line of the cap."

The patentee then points out that, for use with liquids bottled under low pressure, the continuity of the metal in the flange is not indispensable, and the cap may be relied on if the flange be slotted at one or more points. The specification further recites:

"The aforesaid corrugations not only serve an important purpose in connection with securing the adaptability of caps of some one precise size to bottle heads, varied as to their external dimensions as well as to the precise location of their locking or engaging shoulders, but still further in that, having been forcibly applied for service, the flange retains its corrugations on the line of locking contact with the bottle head. * * * My sealing caps are so strong and so firmly applied to bottles that some form of lever or a corkscrew must be employed for detaching them, and my caps are also the first which, when applied to a bottle and locked thereto, as described, have the edge of the flange so projected as to afford a reliable shoulder, with which a detaching lever may be engaged, for enabling a cap to be promptly removed as a result of a prying or wrenching action. * * * I am aware that cork holders of hard metal plate have heretofore been provided with a flange cut or slotted to afford a series of pendent arms or fingers, each of which at its lower end was bent inwardly for causing it to engage with an annular shoulder on a bottle head. Some of said prior devices have had pendent spring arms which were corrugated at their extreme lower ends, to afford strong fingers at their points of contact with an engaging shoulder on the bottle. * * * Such of my caps as have a slotted flange have, in substance, a series of pendent arms; but they differ from all prior cap-arms, in that each arm is so corrugated that each inner corrugation is adapted to, and is forcibly conformed to, the contour of the engaging shoulder on a bottle."

He then describes various caps containing his improvements, and these are illustrated in the drawings, in which Figs. 1, 2, 3, 8, 10. 12,

1+, and 15 show the several forms. The other figures show bottle necks of different forms, with the cap locked into its place. The specification continues:

"Figs. 1, 2, and 3 illustrate one of my sealing caps in its best form. * * * Said cap has a flange which is symmetrically corrugated substantially throughout its depth, and parallel with the axis of the cap. * * * These caps are struck up from disks of sheet metal by means of appropriate dies. * * * The flanges may be varied in depth or width, but I prefer that it be as narrow as will be consistent with the proper engagement with a bottle head having thereon an annular shoulder. * * * The shoulder should be so located, or the flange be of such width or depth, that, when the top of the cap has been properly forced upon the sealing disk and held there, the flange will so overlie said shoulder that the latter may be properly embraced by the inner corrugations. * * * It will be seen that, when a cap has been thus applied to a bottle head, the lower edge of the flange is so far projected from the adjacent surface of the bottle that it is readily accessible for engagement by a bottle opener. * * * This projecting edge on a metallic sealing cap employed in combination with and locked to a bottle is believed to be novel, and is of material value when considered in connection with opening a bottle; but such an edge is not wholly dependent upon these corrugations, although the lower edge of the outer corrugation presents an appropriate projecting edge for reliable engagement with an opener. * * * In the cap as shown in Fig. 8, the flange is flared, and is symmetrically corrugated at its lower portion only. * * * The cap as shown in Fig. 10 has a flaring flange, which has its lower portion initially corrugated, but in a more or less irregular manner; the metal being crimped, instead of being symmetrically corrugated, as in the caps previously described. * * * The cap shown in Fig. 12 has a flaring flange, which is not initially corrugated at all, but which, when applied to a bottle, has the lower portion irregularly corrugated, as a result of bending the expanded flange downwardly and inwardly into locking relations with the engaging shoulder of the bottle, and the lower edge affords the same reliable projection with which a bottle opener may engage. * * * The cap shown in Fig. 14 has a plain flange, which is not flaring and not initially corrugated, * * * but, as shown in Fig. 15, has radial indentations at proper intervals, which bend the flange into desired locking relations with the engaging shoulder, and cause the metal to be corrugated at or adjacent to the line of locking contact, * * * leaving the lower edge projected, as with the other caps, for a reliable engagement with a bottle opener. It is now to be distinctly understood that the sealing caps shown in Figs. 14 and 15 must be composed of hard metal, * * * and, although I do not presume them to be novel as to form and construction, I do believe they are the first caps composed of hard sheet metal which are adapted to the service indicated. * * * It will be obvious that, while some special form of opener may be required for detaching caps with the greatest possible convenience, a thin-edged tool or a knife may be readily applied to the projecting edge for detaching a cap; and, to provide for the use of a corkscrew, each cap is centrally perforated at the top, enabling a corkscrew to enter the sealing disk or cork. * * * In some instances it is desirable that the edge of the flange be so thoroughly housed within the recess below the engaging shoulder as to practically eliminate the projecting edge feature and thereby secure specially high resisting power; * * * and it will be obvious that while all of the corrugated caps shown will afford a well-defined, stiff, and strong projecting edge, either of them, on being well compressed on the line of the middle of the recess in the bottle head, will have the entire lower portion of the flange made substantially flush with, and merging with, the surface of the bottle head below the recess. While I prefer the flanges of my caps to be continuous or unbroken, the caps may be relied upon for service with liquids under comparatively light pressure if the flanges be slitted at intervals. * * * I have illustrated but one form of sealing disk, but it is to be understood that various forms may be employed, and also that they may be varied as to their component character."

The three claims in controversy are as follows:

"(1) The combination, substantially as hereinbefore described, of a bottle having on its head an annular engaging shoulder, a sealing disk, and a metallic sealing-cap which encircles the periphery of the disk, and has a flange which is bent into locking contact with said shoulder, and. which also has a projected edge to afford a surface with which a bottle-opener may reliably engage for detaching the cap from the bottle.

"(2) The combination, with a bottle having on its head an annular locking shoulder, and below said shoulder a projecting surface, of a sealing disk and a hard-metal sealing cap having a flange which is bent into locking contact with the said annular shoulder, and has a projecting lower edge for engagement by a bottle-opener lever fulcrumed on the projecting surface of the bottle below said edge.

"(3) The combination, substantially as hereinbefore described, of a bottle having a head provided with an annular engaging shoulder, a sealing-disk, and a hard-metal sealing cap having a flange which encircles the disk, and is bent into locking contact with said shoulder, and is corrugated in the bent portion in the line of said locking contact."

It will be observed that neither of these claims, except the third, makes the corrugated flange, in terms, an element, and that this claim makes only such a flange an element when it is "corrugated in the bent portion." Other claims of the patent are similar to claim 3, except that they specify a flange "corrugated substantially throughout its depth." The eighth claim embraces a sealing cap "having a flange adapted to be bent into locking contact" with an annular engaging shoulder of a bottle-head provided with a sealing disk, etc., and the ninth claim embraces a "continuous or unbroken flange bent or indented circumferentially."

The specification is so elastic and so fertile in its suggestive and qualifying matter that it is difficult to define with exactness what particular form of cap is embraced by the terms of a particular claim. It seems to have been the effort of the draftsman to frame the specification and claims so that any desirable limited or broad construction may be placed upon several of the claims, and thus defeat a defense of anticipation or of noninfringement. It is apparent, however, that the patent is expressed with a view of securing to the patentee a monopoly of various forms of sealing caps—one (the best form) being a cap with a flange continuous and unbroken, and corrugated vertically substantially throughout its depth; another, a cap with a slotted flange corrugated similarly; another, a cap having a flaring flange with only its lower portions corrugated; another, a cap having a flaring flange not corrugated at all, but irregularly bent in corrugations or radial indentations as the result of bending it into position upon the bottle; and perhaps other forms which are slight variations from any of these. In all of these the cap is claimed "in combination" with other parts, but, as will hereafter appear, all of these parts were old and had been used collectively with a metallic sealing cap; and, if their enumeration serves any purpose except to point out the adaptability of the cap to use with such parts, it can only be to so restrict the claim that the making of the cap, or its use without them, would not infringe the patent. Specifically, read in the light of the recitals, and without reference to the prior art, except as therein referred to, claim.

1 covers a metallic cap of any kind having a flange that can be bent into locking contact over the bottle shoulder, and a projected edge. The flange may be slotted or continuous, corrugated, and possibly uncorrugated; and the cap may be of metal of varying degrees of hardness, provided it is resilient. Claim 2 covers a "hard-metal" cap (and must refer to the caps of Figs. 14 and 15) not corrugated, except by the bending process, and having a projecting edge; and claim 3 covers a hard-metal cap not corrugated, except by the bending process, and having no projecting edge.

The question of the validity of the claims in controversy, in view of the prior art, lies at the threshold, and should be the first one considered. So far as appears by the record, the date of Painter's earliest invention in bottle stoppers is to be deemed as of November 5, 1889, the date of his application for patent No. 468,259. That patent shows a sealing cap with an integral continuous corrugated flange, adapted to be bent into locking contact with a bottle head having an annular shoulder, and in the drawings (Figs. 1, 2, and 3) shows the "best form" described in the specification of the patent in suit. This patent also shows and describes a cap having a slitted flange. Claim 5 is for "a bottle sealing cap having a flange corrugated in line with the axis of the cap and slitted at intervals, the corrugated portion of the flange being adapted to be bent into locking contact with an annular shoulder on a bottle head, substantially as described." Notwithstanding the application for this patent was the earlier one, we are of the opinion that it was a later patent, and what was described and claimed in it has no bearing upon the validity of the claims of the patent in suit. Where two patents are issued on the same day by the Patent Office, and there is no other evidence of seniority between them than such as appears from their several numbers, the earlier in number must be regarded the senior and the earlier in publication. Upon the same consideration, No. 468,226 must be regarded as an earlier patent than No. 468,258. But the former does not claim the invention of the latter. The specification contains the following recital:

"My present caps, in their best forms, have outwardly flared edges, and the heads of the bottles below their locking shoulders are of such form and diametric dimensions that when the cap is locked upon the bottle there is ample space below and at the rear of the flange to admit of free insertion of any pointed or thin-edged device capable of serving as a bottle opener by prying the flange outwardly from the locking rib at several points, and thus releasing its hold thereon. The projected edge of the cap so applied also enables the use therewith of special bottle openers operating as levers, as with my prior caps. * * * It will also be readily understood that the form and character of the corrugations are immaterial to my present invention, inasmuch as they may be long, short, large, small, straight, or spiral, because in either case the flanges are to be always kept in locking contact with the annular shoulder of the bottle head in such a manner as to fit the annular space, this being wholly independent of the corrugations."

The claims cover a cap having a flaring edged flange in combination with the locking shoulder and sealing disk. What is described in an earlier patent to the same inventor has no greater efficacy in defeating the novelty of the subject-matter of a later patent to

him than it would have if it had been described in an earlier patent to a different inventor. In either case such descriptive matter has no effect upon the patentable novelty of the earlier invention. If, however, the invention of the later patent is patented by the earlier one, the earlier must, of course, invalidate the later, for there cannot be two valid patents for the same invention, and the later patent is therefore void.

In considering the prior art, it should be said preliminarily that the degree of hardness, thinness, or resiliency of the metal of the patented cap is of no consequence in its bearing upon the question of patentable novelty, nor is the depth of the flange, as these were matters of mere mechanical modification and adaptation. The recitals in the patent sufficiently show this. They also show that no invention could have resided in using a cap with a bottle having an annular shoulder, or in locking a metallic cap into tight contact with such a shoulder, nor in the use of caps with sealing disks interposed over the orifice of the bottle, instead of corks or plugs. Nor was there any novelty in locking the cap so firmly around the bottle shoulder as to require a special instrument for releasing and removing it readily, and this appears by the Livermore patent of 1866, which shows a detaching lever for that particular use.

The cap of the Whittlesey patent, which has been referred to, was intended for use on cans and fruit jars. It shows a projected edge formed by the corrugations in the flange. While it was not designed to be pressed into contact with a shoulder upon the jar, it was as well adapted to this purpose as the cap shown in Fig. 10 of the patent, and is as easily removable as such a cap; and, if a similar cap is covered by the first claim of the patent in suit, the Whittlesey cap completely negatives its novelty. Whittlesey did not see fit to describe the degree of resiliency which he deemed desirable, nor to detail the advantages incident to his cap, but to those skilled in the art this was unnecessary. The brevity and simplicity of his specification and claim do not detract from the merit and validity of his patent, and are a refreshing contrast to the verbosity of the patent in suit.

The patent to Butler of 1872 shows a sheet-metal cap for sealing bottles with a flange projecting downward entirely around the top of the neck of the bottle. The flange has on its lower edge a succession of short slits to assist in turning in the lower edge of the flange more readily when the cap is in place upon the bottle. In this cap the top is formed with an annular channel intended to surround the neck of the bottle, and to be filled with wax or some other adhesive or plastic sealing medium.

The Berthoud-Gedge English patent of 1878 is for an improvement in the art of hermetically closing bottles, jars, etc., by the aid of a strong metal cover or capsule. It describes a cap stamped out of sheet iron, tin, or any suitable metal. An elastic washer is used as a sealing medium. The bottle is shown with an annular ring or shoulder at the top of the neck. The cap is formed with depending sides or flanges to extend below the bottle shoulder. It also describes a machine for applying the cap to the bottle with

rapidity and accuracy. In sealing the bottle the washer is interposed between the cap and the orifice, and both are subjected to a powerful vertical pressure, which, bearing upon the cap, firmly compresses the sealing disk. To open the bottle, the cap is raised by inserting a pointed instrument beneath the flange. The patent shows another form of cap in which a tongue is left depending from the flange for the purpose of unsealing the bottle with greater ease. When the cap is placed upon the bottle, this tongue lies against the neck; and, to unseal the bottle, the tongue is slightly raised by inserting an instrument beneath it, and the metal can then be torn from part or the whole of the cover. If the flange of the cap first mentioned were corrugated, this patent alone would negative the novelty of the first and third claims of the patent in suit.

The English patent to Thompson of 1885 shows a tin cap for sealing a cylindrical tin can. The can is provided near the top with an annular groove. The cap (called the "lid") is flanged, is formed slightly conical to fit over the top of the can, and its flange is provided with a bead at the edge. The patent points out that, if it is desirable to make the lid extremely tight, this can be done by pressing the bead into the groove, while, if the bead is not pressed into the groove, the lid can be easily pried off. It is essentially the cap of the eighth claim of the patent in suit.

The patent to Goulding of July 9, 1889, for a bottle stopper, shows a cap made of elastic metal, struck out of stiff tin or sheet metal, from which depend a number of flanges (termed "arms") turned in at the lower end to grasp the shoulder neck of the bottle, and provided at such lower and inturned ends with longitudinal corrugations to stiffen the arm in the direction of strain, and thus to resist unbending distortion and breaking in use. The description states that without the corrugations the engagement of the holder with the shoulder would not be so secure. This cap is not intended for use with a sealing disk, but with a bottle which has been corked in the ordinary way; but this circumstance does not detract from its value as an anticipatory reference as showing a cap with a slotted and corrugated flange.

Further references to the prior art will serve no useful purpose. Those which have been cited show that while there may have been, and doubtless was, improvement in what was done by Painter, there was no invention. He improved the Berthoud-Gedge cap by corrugating the flange, but Whittlesey and Goulding had shown him in their patents, one the continuous corrugated flange, and the other the slotted corrugated flange. That the corrugated flange of these caps would have a projecting edge when the caps were fastened upon the bottles is obvious, and must have been obvious to those skilled in the art when Painter utilized the feature and incorporated it into his caps. The advantage of the corrugations in securing a more effective locking engagement upon the bottle shoulder had been distinctly pointed out by Goulding. If there was novelty in corrugating the flanges substantially throughout their depth, this was merely a change of form, which it is clear from the patent was not essential, but was preferential only, and the claims in contro-

versy are not limited to that feature of the improvement. In introducing into the flange of the old caps the corrugations like those of Whittlesey and Goulding, Painter merely assembled together parts which were old, and which performed no new work in their new location. It is urged that the great commercial success which has attended the introduction of the patented cap is persuasive that it supplied a want long felt, and which previous inventors had not been able to meet, and is therefore evidence of its patentable novelty. Such an argument is always legitimate, but in this case has not the usual force, first, because the caps put upon the market seem to have been made according to the earlier Painter patent, in which the cap is provided with a flaring flange; and, secondly, because the success is largely attributable to the machine used for fastening the caps on the bottles, and which enables it to be done with great rapidity and efficiency. The cap made by the defendant differs as much from any of the caps shown in the drawings of the patent as these caps do from those claimed in the earlier and the later Painter patents, closely resembles the Goulding cap, and is substantially the cap of the patent to Patterson, granted September 17, 1901. The cap of the Patterson patent is made of nonresilient metal, and its depending flange is provided with an engaging section to lock it upon the bottle shoulder; the engaging section being formed by bending the metal upon itself longitudinally so as to form a fold. The cap is as completely adaptable as is Painter's cap to be locked into place upon a bottle quickly and efficiently, and is fastened upon the bottle by a machine which apparently does its work as perfectly and quickly as that employed in fastening Painter's caps. We cannot resist the conviction that all the claims in controversy are void for want of patentable novelty, and, having reached this conclusion, deem it unnecessary to consider the question of infringement.

The second patent in suit is so clearly invalid that it requires very brief consideration. The specification describes the alleged invention as follows:

"My said improvements relate to hard-metal flanged sealing caps adapted to be used in connection with sealing disks and with bottles provided with an annular locking shoulder; and my invention consists in providing the cap flange at its edge with an integral bead formed by turning the metal upon itself in such a manner that when the cap is placed with its sealing disk upon a bottle, and the disk properly compressed, the beaded portion of the flange upon the cap may be bent inwardly against the bottle head beneath the locking shoulder, and make a firm and reliable locking union of the flange with the bottle head."

The two claims of the patent cover a cap having such a flange. The patentee merely employs the beaded flange of the Thompson patent of 1885. Thompson locked it in an annular groove in the neck of the bottle, while Painter locks it beneath an annular shoulder upon the bottle. It is true, Thompson contemplated using it with a tin vessel instead of a glass one, either with or without an annular groove. It could not involve invention to use the flange on a glass vessel instead of a tin one, or to press it into contact with

136 F.—54

an annular shoulder instead of an annular channel. It does the same work with either material and with either contact contrivance.

The decree is reversed, with costs of this court, and with instructions to dismiss the bill, with costs in the court below.

COXE, Circuit Judge. I dissent from so much of the opinion of the court as holds that the claims in controversy of letters patent No. 468,258 are invalid for lack of invention.