BENJAMIN ELECTRIC MFG. CO. v. DALE CO. et al.

(Circuit Court of Appeals, Second Circuit. November 13, 1907.)

No. 10.

1. PATENTS—ANTICIPATION—PRIORITY BETWEEN PATENTS TO SAME INVENTOR.
    To the general rule that of two patents granted to the same inventor the one first numbered takes precedence of the other, there is an exception where the patentee had an application pending for the second when the first was issued, and especially where the two are the result of the splitting of the same original application by the Patent Office, in which case

neither can be held an anticipation of the other, but they may be treated as a single patent.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, §§ 79–81.]

2. SAME—INFRINGEMENT—CLUSTER LIGHTS.

The Benjamin patents, Nos. 721,774 and 721,777, granted on a divisional application, and both relating to a cluster of electric lights, disclose invention and are valid. Claim 32 of the former and claims 5 and 13 of the latter, however, are void, as too broad and covering other than the "wireless cluster" of lamp sockets, which is the essential feature of the invention. Claims 5 and 7 of No. 721,774 also *held* infringed.

3. SAME.

That one structure may be a patentable improvement on another will not relieve it from infringement of a patent for the latter, where it contains a specific device covered by such patent.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 379.]

Appeal from the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decree of the Circuit Court, Southern District of New York, dismissing a bill in equity for injunction and accounting upon the ground that the articles manufactured and sold by defendant did not infringe the patents sued upon. The opinion of the Circuit Court is reported in 141 Fed. 989.

Wm. H. Kenyon, W. Clyde Jones, and Seward Davis, for appellant. Wm. M. Stockbridge, for appellees.

Before LACOMBE, COXE, and WARD, Circuit Judges.

PER CURIAM. The patents sued upon were both issued to Reuben B. Benjamin on the same day (March 3, 1903) upon an application filed May 20, 1898, and renewed August 10, 1901. Complainants here rely on three claims of patent No. 721,774, viz.:

"5. An electric-lamp cluster, comprising a plurality of metal receivers for the lamps, a metallic truncated portion carrying the receivers and attached to the base, an electric connection with the receivers, an additional contact for each receiver and an electric connection with said contacts, as set forth."

"7. In a plural lamp-socket the combination with an insulating base and a metallic contact-plate mounted thereon, of a plurality of metallic threaded shells for the lamp-bases, supported thereon and in electrical contact therewith, and contacts for the central-lamp terminals arranged opposite the respective shells, substantially as described."

"32. A cluster-lamp fixture comprising an insulating base, a number of threaded shells and center contacts constituting the lamp-sockets mounted upon the insulating-base and a cover having an opening opposite each socket, substantially as described."

The claims of the second patent No. 721,777 which are relied upon are:

"5. A cluster-lamp fixture comprising an insulating-base, a plurality of threaded shells suitably associated therewith, a casing having an opening opposite each shell, and insulating-rings fitting in said openings and secured to said shells."

"13. An electric-light clamp cluster consisting of an insulating-base, a plurality of lamp-receivers supported by said base, center contacts associated therewith, and a finishing or protecting cap or cover separated from the receivers by insulating material."

It is not necessary to discuss the patents or the prior art in detail. Sufficient is set forth in Judge Holt's opinion to indicate what it was that Benjamin accomplished; and we concur in his finding that, although the Benjamin device did not involve any electrical invention, it "had mechanical improvements which at once made a cluster light constructed in accordance with those patents commercially successful," and that "the clusters manufactured under the patents immediately entered into extensive commercial use." We concur, also, in the conclusion that "there is sufficient mechanical invention shown in the Benjamin patents to make the patents valid." They disclose a novel, ingenious, and meritorious invention. Examination of the claims above quoted will show that there is but little difference between the structures shown in the two patents. Claims 5 and 7 of the first patent cover the combination which has been called in argument the cluster unit, without any cover. Claim 32 brings in the cover with an opening opposite each socket, the sockets being separated electrically from the cover by air spaces. The second patent shows the same cluster unit, the same cover, and the same openings; insulating bushing having taken the place of air spaces. In view of this the Circuit Court held that:

"It is very doubtful whether the second patent is not to be regarded as invalid because anticipated by the first patent. * * * As I understand the rule the patent numbered first takes precedence of the other."

This is a correct statement of the general rule, defendants citing Underwood v. Gerber, 149 U. S. 224, 13 Sup. Ct. 854, 37 L. Ed. 710; Writing Machine Co. v. Elliott & Hatch Book-Typewriter (C. C.) 106 Fed. 507; Willcox & Gibbs S. M. Co. v. Machine Co., 93 Fed. 206, 35 C. C. A. 269; and Crown Cork & Seal Co. v. Standard S. Co., 136 Fed. 841, 69 C. C. A. 200. But where the patentee has had an application pending for the allowance of the later numbered patent at the time when the earlier numbered patent was issued, and especially when it was through no fault of his that his original application for a single patent was split up and a plurality of patents issued, an exception is made to the enforcement of this rule. Electrical Co. v. Brush Co., 52 Fed. 137, 2 C. C. A. 682; Thomson-Houston El. Co. v. Elmira & H. R. Co., 71 Fed. 404, 18 C. C. A. 145; Independent Electric Co. v. Jeffery Mfg. Co. (C. C.) 76 Fed. 989. As was stated in Badische Anilin Co. v. Klipstein (C. C.) 125 Fed. 554:

"It would be a failure of justice if the patentee of a meritorious invention should be deprived of the fruit of his labors because an arbitrary rule of the Patent Office has brought about complications not contemplated."

This case is a striking example of the unfortunate result of too close adherence to rule. Benjamin came to the Patent Office with a meritorious invention—a simple one which was quite sufficiently described in a brief specification. The specification and the drawings showed his cluster-unit, by itself and also made practically a commercial article by the use of a cover and a switch; varieties of cover with and without bushing being shown. He asked for seven claims. The logical way would have been to include the genus and its varieties in the same pat-

ent, and half a dozen claims would have covered every possible combination which he was entitled to hold. But by the time the Patent Office got through with him Benjamin was the holder of four separate patents granted upon divisional applications split off from his original one; the four patents containing together 98 claims. It does not seem just that the patentee, who was powerless to obtain any modification of the rule for dividing applications, should be made to suffer from such misdirected energy. There seems sufficient authority to warrant a construction, which will hold that these two patents, based on a single original application and issued on the same day are to be treated as a single one, containing the five claims above quoted.

Of these claims, however, it is conceded by complainant's expert that claim 32 of the first patent and claims 5 and 13 of the second patent are broad enough in their terms to include forms of the plural or cluster lamp sockets other than the wireless form. We have been able to concur with the Circuit Court as to the validity of Benjamin's invention only because by his combination of parts he was able to dispense with the individual lamp wires and made the so-called "wireless" cluster" a commercial success. Therefore these three claims, which may fairly be construed to cover clusters, which are not "wireless" cannot be sustained.

The question of infringement, the only one left in the case, will be best understood by reference to the following diagrams:

Fig. 1.

Of these Figure 1 is the complainant's first model as shown in the first patent, Figure 2 is complainant's second model shown in the second patent, in which the contact plates are on different sides of the base, and Figure 3 is defendants' device as shown in the brief of defendants' counsel. Figure 3, however, does not show the upper or back plate, the equivalent of e′ and e⁵ of Figure 1 and 2, respectively, which is screwed to the conduit pipe that brings in the wires from the line circuit. The structure shown in Figure 3 is fastened to the upper plate by a bayonet joint and is readily removable. It is at once apparent that the claims above quoted read upon this structure, which is a plural

lamp socket or electric lamp cluster. The "insulating base" is 10; the "metallic contact plate" or "metallic truncated portion" is 11; 12, 12, are the "threaded shells" or "plurality of lamp receivers"; 16, 16, are the "contacts for the central lamp terminals" or "additional contacts for each receiver." In defendants' device part of the metallic truncated portion is dispensed with, the threaded shells being fastened to prongs which project upward from the contact plate. This change of form, however, is unimportant. What is left after the superfluous metal is removed performs substantially the same function.

Extended argument has been presented as to the meaning of the phrase "insulating base," it being contended by defendants that their porcelain part, 10, is not the insulating base, a, of the patent, because in their device 10 rests upon 9, which is itself fastened to 12, which is supported through the bushing, 13, by the metal cover, 5; whereas, in the patent, b and c are fastened to and dependent from a, while the cover, e, is also hung from a. We fully concur in the statement of the Circuit Court that the "true and essential insulating base * * * in all the wireless clusters is the body of insulating material between the two contact plates; and in that sense * * * the insulating base of defendants' patent is substantially the same as the insulating base of both the Benjamin patents." That court, however, found in the circumstance that in the Dale device the insulating base and contact plates are placed within the lower hemispherical casing and supported by it sufficient mechanical difference from the Benjamin device to entitle Dale to a patent, and therefore found noninfringement, although with "much doubt." In this final conclusion we are unable to concur. It may be conceded that Dale improved on Benjamin. His structure is more convenient, in that it may be removed bodily from the back plate, instead of compelling the workmen to wire and repair through the small aperture covered by cap, e'. Possibly the improvement may be patentable, but that circumstance will not relieve it from infringement, if it contains the specific device which Benjamin made and patented. Thomson-Houston El. Co. v. Ohio Brass Co. (C. C.) 130 Fed. 549; Perkins Elec. Switch Co. v. Buchanan (C. C.) 129 Fed. 135. Interpreting the phrase "insulating base" as we have, the Dale structure seems fairly within claims 5 and 7.

The decree is reversed, without costs of this appeal, and cause remitted, with instructions to decree for injunction and accounting under claims 5 and 7 of No. 721,774, and to dismiss the bill as to No. 721,777.