### REGAL SHOE CO. v. CLARKE-EMERSON MFG. CO.

(District Court, D. Massachusetts. January 14, 1924.)

No. 1765.

1. **Patents ⊕328—Bliss, No. 1,426,143, for machine for fitting shoes, held valid and infringed.**

The Bliss patent, No. 1,426,143, for machine for fitting shoes, *held* valid, and claims 12 and 13 infringed; claims 1 and 2 not infringed.

2. **Patents ⊕240—Patentable improvement may infringe.**

That an improvement may possess patentable novelty does not preclude its being an infringement.

In Equity. Suit by the Regal Shoe Company against the Clarke-Emerson Manufacturing Company. Decree for complainant.

George N. Goddard, of Boston, Mass., for plaintiff.

Frank F. Phillips, Jr., of Boston, Mass., for defendant.

LOWELL, District Judge. This is a suit for infringement of letters patent No. 1,426,143, granted to Elmer J. Bliss on an application filed on August 7, 1918, and assigned to the plaintiff, for a machine for fitting shoes of stock sizes to feet. The machine is an ingenious contrivance, depending for its usefulness on the following facts:

The width of the foot for shoes is taken at the ball joint, which is its widest part. In the average foot the ball joint is placed at two-thirds of the distance from the heel to the toe. Sizes for men's shoes begin at No. 5 and end at No. 12, the difference in the length between the different sizes being one-third of an inch. Width sizes are indicated by letters A to E, the difference between two sizes being one-twelfth of an inch. Owing to the fact that a long foot is wider than a short one, the width sizes A to E do not represent fixed sizes, but differ with the length of the shoe; thus 7A differs in width from 8A. The inventor took advantage of these facts by making use of a device for measuring the widest part of a foot, consisting of side members of a machine, which were arranged to slide transversely of the foot being measured, but not longitudinally. The side members flare out from their narrowest portion at angles corresponding with the ratio between the length and width of feet of different sizes. The plaintiff's machine consists of a bed plate on which the foot is placed when being measured, with a fixed heel stop and a plate, movable longitudinally, for measuring the length of the foot. There are also the two side members already referred to. These can be moved laterally independently of each other, but not longitudinally. The bed plate is raised from the ground by small lugs to allow the use of mechanism to operate the indicating device, which will now be referred to. This consists of a pointer connected with both side members by a toggle joint in such a way that, when the side members are pressed apart by the foot which is being measured, the width of the foot in shoe sizes A, B, etc., will be indicated on a scale over which the pointer travels.

On account of the fact that, although a long foot is wider than a short one, its widest part is further from the heel than the correspond-

ing part of a short foot, the flare of the side pieces enables the width size of the shoe for both the short and the long foot to be properly indicated by the pointer. The plaintiff relies especially on claims 1, 2, 12, and 13, which are as follows:

"1. A device for measuring feet embracing in its construction a foot-supporting base provided with heel-positioning means combined with a pair of side-gauging members arranged on opposite sides of the ball portion of the base each of which is capable of movement independently of the other and a width-indicating device operatively interconnected with both said side members to indicate the width size of shoe for the foot being measured according to the width of the space between said gauging members, substantially as described.

"2. In a foot-measuring device the combination of a foot-supporting base, side-gauging members mounted to have transverse movement toward and away from each other across said base and supported against movement longitudinally of said base, a width-indicating device operatively combined with both said side-gauging members in a manner adapted to permit unequal movement of said members while indicating in width sizes the total separation of said side-gauging members, substantially as described."

"12. In a foot-measuring device, the combination of a foot-supporting platform having a heel-positioning stop, opposed upwardly projecting width gauge members mounted to have lateral movement independently of each other, means normally acting to draw said gauges toward each other into gauging contact with the opposite sides of an interposed foot at the ball portion thereof, and means co-ordinated with said gauge members for indicating the size width measurements in correct correlation with the length and width of the foot being measured, substantially as described.

"13. In a foot-measuring device, the combination of a foot-supporting platform having a heel-positioning stop, independently movable width-gauging members automatically drawn into gauging contact against the opposite sides of an interposed foot, means for indicating the width size of an interposed foot, in direct co-ordination to the length of the foot said indicating means embracing a width size scale and a co-operating indicator, said width-gauging members, said indicator and said scale being co-ordinated to indicate on said scale the width size in correct correlation with the length of the foot, substantially as described."

The defendant's machine resembles the plaintiff's in all essential particulars. It has side members which are independently movable transversely, but not longitudinally. It has also a heel stop and a movable toe plate. The mechanism for registering the width size in the defendant's machine depends, as does the plaintiff's, on the amount of separation of the side members. It is not, however, directly actuated by the side pieces as in the plaintiff's machine. Defendant's side members are not flaring in shape, the actual width of the foot being translated into width sizes, not by the angular shape of the side members, but by mechanism correlated to the side members. The width, however, of the foot being measured, affects the side members of the defendant's machine in a similar manner as in the plaintiff's machine, as those members are pushed apart by the foot being put between them, their distance apart being the determining factor. In the defendant's machine the actual width of the foot is translated into width sizes by means very different from those used by the plaintiff. The defendant makes use of a wedge-shaped plate attached to a handle, which is operated by the shoe salesman. The wedge engages stops on each one of the side members, and is formed of such a shape that, the further apart are the side

pieces, the further will the wedge travel longitudinally of the machine in registering the width. The device used by the defendant for determining the length of the foot is borne by the same rod which is connected to the wedges. This is a convenient, but not necessary, part of the mechanism. The shape of the wedge is such that at each size length a width of foot which would cause the stops carried by the side members to engage with the sides of the wedge would be the narrowest size width made. If the foot is wider than that, the width is shown by the distance traveled by the wedge before it comes to rest with its sides engaging the stops on the side pieces. This is indicated on a scale which slides with the toe plate and is adjustable for each length size. The defendant's machine is made under letters patent No. 1,410,092, granted to Harold E. Clarke on an application filed on November 14, 1919, and assigned to the defendant. The sliding width scale last mentioned is not covered by the patent.

[1] The principal controversy arose over the scope of the claims in the patent. There was, to be sure, a contention that the patentee was not the original inventor; but the evidence offered was so conclusive, to my mind, of the contrary, that I will not incumber this opinion with a statement of it.

The four claims sued on fall into two classes; the first consisting of claims 1 and 2, and the second of claims 12 and 13. All the claims include side members moving independently of each other laterally, but not longitudinally. This is the essence of the plaintiff's invention, though there are other elements comprised in the claims. In claim 1 the means for registering the width sizes are said to be "operatively interconnected" with the side members. In claim 2 the phrase is "operatively combined." In my opinion the defendant's machine infringes neither of these claims. The means for indicating the width sizes used by the defendant are neither operatively interconnected nor operatively combined with the side members.

Claims 12 and 13 remain to be considered. Claim 12 includes "means co-ordinate with the said gauge members for indicating the size width measurements." Claim 13 has "said width-gauging members, said indicator and said scale being co-ordinate to indicate on said scale the width size." The defendant's contention is that his mechanism for indicating the width sizes is not co-ordinated with the side members, but with the toe piece, and therefore that it does not infringe. He also contends that his machine is more accurate than the plaintiff's. The defendant's mechanism may give more accurate results than the plaintiff's, but it depends on the mark set by the side members, although it is true that the end piece assists in interpreting this mark, but the correlation with the end piece has nothing essential to do with the operation of the machine. The size length might as well be indicated by a separate movable plate. The defendant's means for interpreting the mark set by the side members are co-ordinated (which in my opinion means set in due order or proper relative position) with the side members, though they require for their operation an additional element.

[2] The defendant further argues that the claims, while valid, should receive a strict interpretation, and that they do not cover the use of means which in themselves are novel. It may be admitted that

the specific mechanism used by the defendant may properly be the subject of a patent, and it is not contended by the plaintiff that the defendant's patent is invalid, but in my opinion it can be valid only as an improvement on Bliss' invention. The defendant further contends that as a matter of law a novel construction does not come within the words used in the claims. I am of opinion, however, that this contention is unsound. If it were sound, there could be no such thing as a patentable improvement. Walker, Patents (5th Ed.) §§ 16, 376; Cantrell v. Wallick, 117 U. S. 694, 6 Sup. Ct. 970, 29 L. Ed. 1017; Benjamin Electric Mfg. Co. v. Dale Co., 158 Fed. 617, 85 C. C. A. 439.

Claims 12 and 13 are valid, and infringed. Let there be a decree for the plaintiff for an injunction and accounting.