**DANBURY & BETHEL FUR CO. v. AMERICAN HATTERS & FURRIERS CO., Inc.**

**EASTERN FUR PRODUCTS CO. et al. v. SAME.**

**GEBERT et al. v. SAME.**

Nos. 93–95.

Circuit Court of Appeals, Second Circuit.

Dec. 7, 1931.

Victor D. Borst, of New York City, for appellants.

Janney, Blair & Curtis, of New York City, for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

These three suits for infringement of patents Nos. 1,507,891 and 1,507,892, granted to Parks, were tried together, and will be considered in one opinion.

The patent No. 1,507,891 is for a composition of matter employed in carrying on the process patent No. 1,507,892. The latter is the process and product patent. Both were granted on September 9, 1924, on applications filed June 30, 1923. They propose the conjoint use as a carrot of an oxidizing agent, as hydrogen peroxide, and a caustic alkali, as sodium hydroxide. Carroting is an art used in the manufacture of felt hats. Felt hats are made of the fur of small animals, principally rabbits. The hat-making process involves the formation of a cone of loosely deposited fibers, known as a hat body,

and also as a hat bat, which, by manipulation in a wet state, is caused to gradually change into a very much smaller and very much stronger, firmer, and thicker article from which the hat is ultimately formed by blocking and stretching. This change is rendered possible by the carroting of the fur. Uncarroted fur will not felt and shrink. The transformation of the fur fabrics by the carroting process is an important step, and is the subject to which both inventions relate. The usual carroting operation, and the preferred form of the patents in suit, is that the carroting solution is brushed onto the fur when it is on the pelt, and the fur is then allowed to dry. Sometimes artificial heat is used. The carroting of the fur by immersion is unusual; in fact there is no testimony that any one has ever carroted furs by immersion in solution, although that is claimed by the appellant. Except for the carroting under the invention in suit, the use of mercury was universal. But the use of a mercury carrot was found to be poisonous, and resulted in an occupational disease of hat makers—mercury poisoning. The carrot of the patents in suit proved to be nonpoisonous, and avoided stains on the fur which the mercury carrot imparted, a yellowish tinge.

Appellee's inventions permit the stain or dye to penetrate entirely through the fur; mercury carrot does not do this. It has been found that fur, carroted by the inventions in suit, produces many attractive and popular characteristics as are referred to in the so-called "flannel felt." Moreover, it has been found that economies in producing cheaper grades of hats have been possible. It gives a closer felt because it is more evenly knit together. These enumerated advantages have been found to result from the application of the appellee's process of brushing a strong carrot of the described character on the pelt. Patent No. 1,507,892 deals with a convenient method of getting an aqueous solution of hydrogen peroxide and sodium hydroxide by simply introducing a specified amount of sodium peroxide into water. Sodium peroxide in water inevitably and immediately works down into the two above-named chemical compounds.

The claims deal with the process, but some of the claims, as claim 8, deal with the treatment of the fur, preparatory to felting, with a solution of an oxidizing agent and a cleansing agent of such nature as to give the fur felting properties. Claim 11 is more specific as to the solution used, setting forth sodium hydroxide and hydrogen peroxide as ingredients of the solution. Some of the

claims in suit, instead of specifying the result of adding sodium peroxide to water, define the solution as a solution of sodium peroxide in water, which is another way of saying the same thing. A solution of sodium peroxide in water is a solution of sodium hydroxide and hydrogen peroxide. Claims 12 and 16 specify the range of strength of the solution with different degrees of narrowness.

Patent No. 1,507,891 deals with the composition of matter which forms the material for carrying on the process and for producing the product dealt with in the patent just considered. This material and its action are referred to in the specifications of the patent with particularity substantially equal to that contained in patent No. 1,507,892.

There are three claims in suit. The first sets forth the carroting liquid comprising the solution of sodium peroxide dissolved in water; claim 2 specifying and defining a carroting solution comprising an aqueous solution of sodium hydroxide and hydrogen peroxide of a strength of not less than 1° Baume nor more than 10° Baume; claim 3 is similar to claim 2, but narrower, in that it specifies the limits of the range as 2½° Baume and 7° Baume. These claims are explicit and clearly stated.

■ It is not clear as to what action takes place in the chemical and physical structure of the fur when it is carroted. Experts differ as to the result, but, whatever may be the cause of the change, some marked change is wrought. After the fur has been carroted, it seems to felt with ease. The changed character of the fur is important, and what may be the microscopic actions which bring this about are not so important, nor is the difference of opinion as to it. It is not necessary that the inventor understand or be able to state the scientific principles underlying his invention. Diamond Rubber Co. v. Consolidated Tire Co., 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527.

■ Patent No. 501,797, issued to Lussigny, was for the use of caustic soda in carroting, and the Tweedy patent, No. 339,350, for the use of hydrogen peroxide. They are urged upon us as prior art. Both were considered in the patent office on these applications and found not to anticipate Parks. Other patents showing these two elements, caustic soda and hydrogen peroxide, are cited but are not prior art. But it is claimed because of these prior patents that the patents in suit are an aggregation and not a patentable combination. The argument is that the two agents,

346

caustic sodium and hydrogen peroxide, may be separately applied to the fur, instead of first being mixed and thus simultaneously applied, and the same excellent results obtained. And it is argued there can be no true coaction. Assuming that separate uses have the same result as the use of a mixed carrot, we would have first the application of caustic soda and then hydrogen peroxide. And caustic soda once applied to the fur remains upon it, for, as defendant Zwyner testified, washing the caustic soda off as much as he could with water, it was not all washed off. He indicates that the washing consisted of brushing some water on the fur. The caustic soda, even after the skin dries, remains on the hair, and, when the hydrogen peroxide is applied, the same combination is found as if they had been mixed in the first place. If the hydrogen peroxide is first applied and sodium hydroxide—caustic soda—later put on the pelt, there would be some reaction on the fur which prepares it to fit in with the action of the caustic soda. Some chemical or microscopic change of such nature adapts it for a different reaction by the caustic soda, different than that in the case of caustic soda acting upon the raw fur. If the separate action of the agents in either order gives the same results as their simultaneous reaction, no deduction can be made therefrom which tends to strengthen the argument of aggregation. In all processes, the individual steps are successive rather than simultaneous, and to make a valid claim for a combination it is not necessary that the several elementary parts of the combination act simultaneously. If the successive action of each contributes to produce one particular result which, when attained, is the product of the simultaneous or successive actions of the elementary parts viewed as one entire whole, a valid claim for thus combining those elementary parts may be made. Walker on Patents (6th Ed.) p. 87. The test is whether the combination produces a new result or an old result in a better way. Webster Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177. This record demonstrates that the admitted failures of caustic soda and hydrogen peroxide used alone, have been overcome by the patented combination of the matters used in practicing the Parks inventions.

An argument is advanced that the component constituents do not coact. Apparently each does something because of the action of the other. No matter how strong a solution of caustic soda is used or how long it is applied, it does not get the result. The same is true of hydrogen peroxide, but, when both are used together, even successively, they do something which the other cannot do alone. They bring about the result which the art desired. As stated in the report of the Mellon Institute, which made research on hatting, "carroting reaction is bound up in interdependent reactions of hydrolysis and oxidation" and "neither is sufficient in itself, but together they can cause a reaction which duplicates that of mercury carrot." The caustic soda has a hydrolyzing effect, and the hydrogen peroxide has an oxidizing effect. No one claims that an oxidizing action is found in the caustic soda alone, nor a hydrolyzing action in the hydrogen peroxide alone. As compared with these constituents, the patented carrot has a new action which is different from either alone, oxidization in one case or hydrolization in the other. Thus interaction is clearly established as is chemical reaction. The result has been of great value to the manufacturers of hats. It is thus apparent that the inventor Parks took the two unqualified failures as carrots and by putting them together has made a success, bringing about the new and desired results as above stated.

The appellant argues that the patent No. 1,507,891 is invalid because the composition of matter is an unpatentable discovery. The discovery of a novel use of an old substance in a new composition, whereby there is attained a new and unobvious result, has long been held to be patentable. In General Electric Co. v. Hoskins, 224 F. 464 (C. C. A. 7), it was argued that the nichrom wire, of which are made the resistance wires for electric toasters, flatirons and the like, was not patentable because the alloy of the wire was old at the time of the invention there in question, and it was old for the purpose of electrical resistance. But the court held that was insufficient to invalidate the patent. Copper sulphate used in the gas mask to absorb ammonia was broadly patentable, although the same substance had been used for the same purpose before. Yablick v. Protecto Corp., 21 F.(2d) 885 (C. C. A. 3). See: Corona v. Dovan, 275 U. S. 358, 48 S. Ct. 380, 72 L. Ed. 610; Ansonia Co. v. Electrical Supply Co., 144 U. S. 11, 12 S. Ct. 601, 36 L. Ed. 327; Internatl. Cork Co. v. New Process Co., 6 F.(2d) 420 (C. C. A. 2). The claims here specify the strength of the solution or proportions of chemicals used, and the patent explains the proper use thereof. It is not a matter which is obvious to those skilled in the art, and this knowledge was acquired only after a long period of

experimentation to find the proper strength of solution to be used. Minerals, Ltd., v. Hyde, 242 U. S. 261, 37 S. Ct. 82, 61 L. Ed. 286; Macomber v. Hazard, 211 F. 976 (C. C. A. 2). The composition of the matters which is suggested in the patents in suit, in the combination devised to be used, had never been suggested.

The claim that patent No. 1,507,892 is void for double patenting because of the grant of the combination patent, is equally without merit. The exercise of inventive thought may produce both a process and its product, as a composition of matter in the art, by the act in which it is applied, and its intended use, if the inventions are truly separable. The inventor is entitled to a monopoly for each, although neither could have been discovered and been available without the other. Sandy Macgregor Co. v. Vaco Co., 2 F.(2d) 655 (C. C. A. 6); Leonard v. Maxwell (D. C.) 288 F. 62; Crown Cork Co. v. Standard Co., 136 F. 841 (C. C. A. 2); Writing Machine Co. v. Elliott (C. C.) 106 F. 507; Willcox v. Merrow, 93 F. 206 (C. C. A. 2). The issuance of two copending patents to the same inventor may not be used one against the other where it appears that the claims for a separate invention from the original claims were allowed on the first application. Each patent is novel and useful and is entitled to protection. Traitel v. Hungerford, 22 F.(2d) 259 (C. C. A. 2); Benjamin Elec. Co. v. Dale, 158 F. 617 (C. C. A. 2).

Infringement is amply established. Indeed, it is practically admitted, except as to the Eastern Fur Products Company. Claims 5, 7, 12, 14, 15, 16, and 17 of the process patent No. 1,507,892, and claim 1 of the matter patent No. 1,507,891 are infringed. Appellants admit that they follow the recommended procedure of the patent. The constituent agents of caustic soda and hydrogen peroxide are applied in mixed form and they are applied by brushing the fur instead of immersing the fur in the solution. They admit the exactness of the infringement by the solution used, making and using a solution comprised of 2½ per cent. of caustic soda and 1 per cent. sodium carbonide and 3.75 per cent. hydrogen peroxide, all by weight. As to claim 1 of composition of matter patent, that likewise is established. As to the infringement by the Eastern Fur Products Company, the testimony and the answers of Zwyner fully establish its infringement. He was president of the company and carried on its business. His act

was the act of the corporation of which he was an officer. His use in directing the business activities of this appellant constituted acts of the corporation.

The patents are held valid and infringed.

Decrees affirmed, with costs.