HIGGIN MFG. CO. v. WATSON et al.

(Circuit Court of Appeals, Sixth Circuit.    February 3, 1920.)

No. 3216.

1. PATENTS ⬤⇒328—FOR REWIREABLE SCREEN CONSTRUCTION VALID, BUT NOT INFRINGED.

The Watson patent, No. 956,239, for rewireable screen construction, *held* valid, as involving a degree of invention over the prior art, but claims Nos. 3, 10, 11, 12, and 13 not infringed by a structure manufactured under the Higgin patent, No. 1,171,952.

2. PATENTS ⬤⇒73—EARLIER ISSUED PATENT WAS PRIOR ART, THOUGH LATER PATENTEE CARRIED INVENTION BACK OF ISSUE DATE.

A patent actually issued before plaintiff's patent was applied for was a part of the prior art as to plaintiff, though plaintiff carried his invention back of the issue date of the earlier patent.

3. PATENTS ⬤⇒310(7)—ANSWER IN INFRINGEMENT SUIT HELD TO SUFFICIENTLY ALLEGE PRIOR PATENT AS ANTICIPATION.

An allegation in the answer in a patent infringement suit that all the substantial and material parts of plaintiff's structure were, prior to the date of the alleged discovery or invention thereof, or more than two years prior to the date of the applications, invented, patented, described, and shown in numerous patents and printed publications, and more particularly in certain patents mentioned, including one to B., sufficiently pleaded the patent to B. as an anticipation.

4. PATENTS ⬤⇒168(2)—AMENDMENT OF CLAIM TO MEET OBJECTION OF DOUBLE PATENTING IS BINDING ON PATENTEE.

An amendment of a patent claim to meet the Commissioner's objection of double patenting is as binding on the patentee as an amendment to avoid rejection on the prior art, especially as the limitation, if intentionally made, would be binding, though voluntary.

5. PATENTS ⬤⇒328—PATENT FOR IMPROVEMENT IN REWIREABLE SCREENS HELD INVALID IN PART, AND VALID AND INFRINGED IN PART.

Claims 1 and 2 of the Watson patent, No. 836,475, for an improvement on the tubular construction of rewireable screen frames, *held* invalid as involving no more than the skill of a mechanic trained in the sheet metal art, but claim 3 valid and infringed by a structure manufactured under the Higgin patent, No. 1,171,952.

6. PATENTS ⬤⇒66—COPENDING APPLICATION IS NOT PRIOR ART, THOUGH LATER APPLICATION PURPORTS TO COVER IMPROVEMENT THEREON.

The rule that, where two patents are granted on copending applications, neither of which claims any invention claimed in the other, the one later granted, but earlier applied for, cannot, in determining invention, be considered prior art as against the later applied for, but earlier issued patent, is not changed by the fact that the later application purports to cover an improvement on the invention embraced in the earlier application.

Appeal from the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Suit by Henry W. Watson and others against the Higgin Manufacturing Company. From an interlocutory decree for plaintiffs, defendant appeals. Reversed and remanded, with directions.

Edward Rector, of Chicago, Ill., and Allen & Allen, of Cincinnati, Ohio, for appellant.

Livingston Gifford, of New York City, and J. William Ellis, of Buffalo, N. Y., for appellees.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before KNAPPEN and DENISON, Circuit Judges, and McCALL, District Judge.

KNAPPEN, Circuit Judge. Suit for infringement of two United States patents to Watson, viz., No. 956,239, applied for July 27, 1905, and issued April 26, 1910; and No. 836,475, applied for October 30, 1905, and issued November 20, 1906. Both relate generally to rewireable screen construction for doors, windows, and the like openings, and particularly to a tubular sheet metal frame, and means for attaching the screen-cloth thereto. No. 956,239, while issued later, was applied for earlier, than the other. It is thus properly treated as the earlier patent, and is in fact the main or basic patent—No. 836,475 being for specific improvements upon the construction shown in the then pending application for the main patent. The appeal is from an interlocutory decree finding both patents valid and infringed.

[1] 1. The specification of the main patent (No. 956,239) discloses a frame having along its inner edge a lengthwise recess (for holding the wire cloth and its retaining strip), formed by extending both edges of the strip from which the tubular part of the frame is formed into a lengthwise angular flange, the inner edge of the sheet metal being left short and the outer edge extending inwardly over it and forming a locking edge, which thus slightly narrows the mouth of the recess. The retaining strip as shown takes the form of a metallic tube, divided along one side, thus enabling it to be so compressed as to enter the narrowed mouth of the recess. This construction is sufficiently shown by the reproduced Figs. 3 and 6 of the patent drawings—the former being a perspective view of one of the ends of the frame sides; the latter, a like view of the "tubular spring locking strip."

There was nothing novel in the idea of a rewireable screen frame, whether of wood or of sheet metal, having a recess therein for holding the screen cloth, and a removable retaining strip. Wooley (1870) disclosed a wooden tongue or stay rod in a groove in a wooden frame. Whittaker (1886), disclosed a retaining strip in the form of a rope or flexible packing. Connell (1888) showed a sheet metal frame in

tubular form; the retaining member being a nonremovable, resilient spring. Baker (1901) disclosed a nonremovable gripping or clamping device in a metallic frame; the frame proper, as distinguished from the recess, not being closed, although substantially rectangular, and being stiffened by a rod therein. Baker, however, by patent No. 787,818, applied for June 5, 1904, and issued April 18, 1905, showed a sheet metal frame having a recess formed by an extension of one side only of the frame, a locking outer edge of the recess portion formed by an inward turn of the extended frame side, the tube and recess being thus formed from a single sheet, and having a removable sheet metal retaining strip or spline, which differed from a wide mouthed slotted tube in having its outer edge slightly upturned to engage (by slipping under) the outer (hooked) edge of the recess wall, and provided to be "sprung into place" by compression against the inner side of the groove, and, by expansion, to hold the screen wire in position, as indicated by Figs. 3, 4 and 8 of the patent drawings here reproduced, the first of which figures shows the retaining strip in place; the second, with the parts of the frame separated; and the third, the manner of assembling. The specification states that the "stiffener rod" shown in each of these three figures may be omitted.

[2, 3] The second Baker patent was thus clearly prior art as to Watson; the former having been actually issued before Watson's patent was applied for. The fact that Watson carries his invention back of Baker's issue date, but subsequent to Baker's application, is not important under the rule recognized by this court. Lemley v. Dobson-Evans Co., 243 Fed. 391, 395, 156 C. C. A. 171, and cases cited. We see no substantial merit in the proposition that the Baker patent was not pleaded. We think plaintiff could not fail to understand that Baker was claimed to be the first and true inventor of the device of the patent sued on. Although the answer does not expressly so state, we think it fairly implied.[1] But, even if not sufficiently pleaded as

---

[1] The allegation is that "all substantial and material parts thereof were, prior to the date of the alleged discovery or invention thereof by the said * * * Watson, or more than two years prior to the date of applications for said letters patent, invented, patented, described and shown in numerous letters patent and in numerous printed publications and more particularly in the following letters patent of the United States," among which is the Baker patent in question.

an anticipation, the second Baker patent is before us as part of the prior art. In fact, as will be seen, it was cited in the Patent Office as a reference against Watson's application.

The device of Watson's main patent marked an advance over that of Baker's second patent; for, while each has a frame formed of a sheet metal strip bent in tubular form, with a recess for the retaining strip or spline, formed by the extension of the strip which forms the tube, and the recess of each has an outer locking edge, yet Watson's extension of both edges of the tubular part of the frame, in forming the recess, practically, though not with strict accuracy, closes the tubular portion, giving a desirable feature of rigidity to both the tube portion and the recess part, thus increasing rigidity without increasing weight of the sheet metal used. (While the patent discloses other features of rigidity, they are not involved here.) Watson's spline, as described, also differs from that of Baker in the respects before mentioned, and is, we think, an improvement on it; the commercial history of Watson's device indicates that the features referred to had substantial utility; and we are disposed to regard his main patent as involving a degree of invention over the prior art. The claims in issue are Nos. 3, 10, 11, 12, and 13. The third claim reads as follows:

"3. In a window screen, a frame consisting of sheet metal strips bent in tubular form, the length-wise edges of said strips formed in a recess, screen-wire, and a retaining strip consisting of a metal tube divided along one side to form separated edges, said tube adapted to fit said recess."

The tenth, eleventh, twelfth, and thirteenth claims were not contained in Watson's original application. The tenth claim was framed as the result of an interference between Watson and McFarland, and, on priority being awarded to Watson, the eleventh, twelfth, and thirteenth claims were inserted. The tenth claim is as follows:

"10. In an improved window screen, the combination of the frame with grooves enlarged inwardly, the resilient slotted tubes forming a filling piece adapted to be inserted in said groove, the wire fabric to be engaged therein, substantially as described."

The differences between claim 10 and the three following claims, so far as seems important here, are these: In claim 11 the locking bar is characterized as "a resilient tubular locking strip, engaging and holding the fabric in said recess; said locking strip being longitudinally split to form separated adjacent edges, permitting the strip to expand and contract upon the application and release of pressure." In the twelfth claim the locking member is described as "being closed on all sides except one, with the edges of the enclosed side normally out of contact to enable the locking member to be pressed into said groove and to therein expand and lock the wire screen in place"; in the thirteenth claim the locking members are described as "tubular members with edges separated along one side, said members adapted to be compressed into the grooves to bind the edges of the screen fabric against the walls thereof." It will be seen that neither of the last four claims is in terms confined to a frame of tubular form, or even to one made of sheet or other metal, or to one having a recess formed

by the extended walls of the frame proper, and that the specific and dominating element of each of these four claims is the resilient spline.

The alleged infringing structure (put out in 1915, and manufactured under Higgin's patent, No. 1,171,952, February 15, 1916, applied for to meet the demand for rewireable screens) differs from the disclosure of plaintiff's main patent, as shown in Figs. 7 and 8 (here reproduced) of the drawings of the Higgin patent.

The differences are (a) that in defendant's construction, so far as shown in figure 7 below, one of the edges of the sheet-metal from which the tubular part of the frame is constructed is extended only about three-fourths of the way across the floor of the recess; and (b) the retaining member, instead of being in split tubular form, adapted to be sprung past the locking edge, has a camshaped edge adapted for insertion past the locking edge of the recess, whereupon the spline is rocked into position therein. Infringement turns upon the question whether plaintiff's patent, in view of the prior art, and its office history, is entitled to be construed broadly enough to cover defendant's construction.

We think it beyond doubt that the tenth, eleventh, twelfth, and thirteenth claims each call for a resilient slotted tube, whose resiliency is necessary to its insertion into the recess, and which assists in locking the screen cloth therein. It follows that, unless defendant's spline is the equivalent thereof, neither of these four combination claims is infringed.

While the language of claim 3—"a retaining strip consisting of a metal tube divided along one side to form separated edges, said tube adapted to fit such recess"—does not in express terms call for a resilient tube requiring compression to enable it to enter the channel, yet, when considered, as it should be, in connection with the statement in the specification that the screen-wire is attached to the frame in the channel "by means of a tubular spring strip 31 which is formed of a strip of sheet metal bent in tubular form, with the edges a slight distance apart as at 34, so that they may spring together when pressed into channel 21," such resiliency is by natural and normal construction called for; and the natural implication would be that the resilient "retaining strip," being intended to hold the screen cloth by engaging it within the channel, was intended to fit the latter closely.

[4] Plaintiff contends, however, that claim 3 is not limited to a resilient strip. The Patent Office history of this feature of the third claim

is this: The last clause of the claim as originally filed read—"and a retaining strip *formed of a folded strip of sheet metal to fit said recess.*" The claim was rejected on the second Baker patent, and was amended by substituting the words "consisting of a metal tube to fit said recess," in place of the italicized words above. After the claim had been formally allowed, and after the interference was disposed of, the words "divided along one side to form separated edges" were inserted, to meet the Commissioner's objection of double patenting, by reason of certain claims of Watson's improvement application. While Watson was thus not compelled to make the change to avoid rejection upon the prior art, he was required to make it in order to meet an objection which, if persisted in and sustained, would result in the disallowance of the claim.

On principle, we can see no controlling difference between an amendment so made and one made because of the prior art. We think Watson clearly bound by the language of his claim. It not only harmonizes with the express language of his specification, but, even if the limitation might be thought voluntary, it would be none the less binding if intentionally made. McClain v. Ortmayer, 141 U. S. 419, 425, 12 Sup. Ct. 76, 35 L. Ed. 800; Cimiotti v. American Co., 198 U. S. 399, 415, 25 Sup. Ct. 697, 49 L. Ed. 1100; Ohmer v. Ohmer (C. C. A. 6) 238 Fed. 182, 193, 151 C. C. A. 258. And that such was the intention is not open to doubt. It may further be noted that (by contrast with claim 3) in certain of the claims not in suit (Nos. 1, 2, 5, 6, and 7) the form of the retaining strip is not an element. It should go without saying that the third claim is not infringed, unless defendant's retaining member is the equivalent of plaintiff's.

In view of the prior art, we think such equivalency is lacking. The metal of which defendant's spline is made is slightly resilient, and so is the spline itself; but the resiliency is apparently not enough to have substantial operative effect. The contrast with plaintiff's spline in this respect is sharp. True, defendant's spline, in the process of rocking into the channel, requires substantial force, to effect a compression of the screen cloth, and is to some extent locked in place through the screen cloth's resiliency; but the latter's resiliency is not the equivalent of plaintiff's slotted tube, for the latter (as in the case of all splines used for this purpose) has, to begin with, the benefit of the screen cloth's resiliency, and to this resiliency that of plaintiff's spline is an added and dominating feature. Nor, in our opinion, is the cam feature and operation of defendant's spline the equivalent of plaintiff's compressible and resilient spline. The former is not substantially (although it may be slightly) compressed in entering the channel, nor has it been found in practice to be securely enough held therein without the use of pins. Indeed, the pull of the screen cloth seems to result in drawing the cam edge of the spline more firmly against the inner wall of the channel, and thus the outer edge of the spline away from the channel's outer wall, and without substantial resilient action in the spline. Were Baker's second patent not prior art (the learned District Judge thought it was not), the result might be otherwise. But, in view of Baker, plaintiff's invention cannot, in our opinion, be con-

strued broadly enough to embrace defendant's structure. The latter's spline has in fact as much substantial resemblance to Baker's as to plaintiff's. We therefore think defendant has not appropriated the device of plaintiff's main patent.

[5] 2. Plaintiff's improvement patent (No. 836,475) is confined to means for stiffening and strengthening the tube and channel disclosed in the main patent. The invention is stated in the specification to be "an improvement upon the tubular construction shown" in plaintiff's application for their main patent. The stated object is to—

"provide means for stiffening and strengthening the tubular sheet metal frame sides and the side channel pieces for the frame to slide in, so that exceedingly light and thin sheet metal can be used without impairing the rigidity of the frame, thus making an exceedingly light and strong screen."

The means disclosed for accomplishing this end consist of, first, spaced reinforcing ribs pressed into the walls of the tubes and channels, as illustrated in Figs. 2 and 3 here reproduced, which are in substantial effect Figs. 3 and 4 of the main patent, plus the ribs referred to; Fig. 4 (also here reproduced), a sectional view of the tubular frame sides, being a substantial reproduction of Fig. 5 of the main patent (a special reinforced channel strip is provided for when "an exceedingly strong channel" is needed); and, second, the "uniting of the two contacting edges which form the angular flange *12*," "preferably by solder or brazing, so that they are as one, a solid tube as distinguished from a split tube." This, as stated, "absolutely prevents the slipping of one edge on the other from torsional strain on the screen frame and gives

greater rigidity to the construction." Otherwise than already stated, no construction of frame, tube, or channel, except as shown in the main patent, is disclosed. The claims in suit are the first, second, and third. The first reads:

"In a metal screen, a frame, the side and end pieces of said frame each *consisting of a solid tube,* a channel along said tube, screen wire, and a locking means to hold said wire in said channel."

Except that in the second and third claims the words "locking strip" are used, instead of "locking means," the second claim differs from the first only in substituting for the words italicized the ·following: "Composed of strips of bendable sheet metal formed in a brazed tube," and the third in substituting the phrase "composed of strips of metal formed in a tube with lapped edges, said lapped edges brazed together and formed in" (a channel along said tube, etc.).

The only new element in either of the claims in suit is thus the joining (for purposes of greater rigidity) of the two contacting edges of the sheet metal. In our opinion patentable invention was not involved in the mere brazing or welding or riveting of the contacting edges of the sheet metal to prevent torsional strain. In view of the use of such devices for the same purpose in the sheet metal art generally, their application to screen frame construction when the necessity of stiffening or strengthening to prevent such strain appeared would seem to involve no more than the skill of the mechanic trained in the sheet metal art. Johnson v. Toledo Traction Co. (C. C. A. 6) 119 Fed. 885, 890, 56 C. C. A. 415. Baker's second patent disclosed a frame of sheet metal bent in tubular form (although not strictly a closed tube), with but one edge of the sheet metal extended to form the channel. The first and second claims of Watson's improvement patent contain no reference to a channel formed by an extension of both edges of the sheet metal, or of the strengthening of the channel, except as involved in the closing of the tubular part. Neither of those two claims, therefore, marks any advance over the art prior to Watson, except as the tubular part of the frame is closed by the welding, soldering, or brazing; and this we think involves no invention, even if it was necessary, in order to entirely close Baker's tube, that the downturned extension of the upper edge of the sheet metal be slightly extended to accomplish actual contact with the extension of the lower edge.

[6] With respect, however, to the third claim of Watson's improvement patent the case is different, for the invention of his main patent is the earliest one brought to our attention in which the edges of the sheet metal forming the tube are lapped, and thus both extended edges employed in forming the channel, and the third claim of the improvement patent calls for a channel formed by extending both edges of the sheet metal which forms the tubular portion. The validity of the third claim in question thus depends upon the effect accorded to the main patent. On this subject plaintiff contends that the case falls within the general rule, which is recognized by this court, that where two patents are granted on copending applications, neither of which claims any invention claimed in the other, the one later granted, but earlier applied for, cannot, in determining invention, be considered prior art as against the later applied for, but earlier issued, patent. Century Co. v. Westinghouse Co. (C. C. A. 8) 191 Fed. 350, 352, 112 C. C. A.

8; Toledo Co. v. Kawneer Co. (C. C. A. 6) 237 Fed. 367, 150 C. C. A. 378. Defendant contends, however, that as the invention of the second patent was specifically alleged and described as a mere improvement upon the main invention disclosed in the earlier application, it is invalid, if it contains in fact no invention over that disclosed by the main patent. In other words, if no invention is involved in the improvement, it is not a patentable improvement, regardless of the copendency of the applications.

Specific authority apart, this contention is not without attractiveness. The proposition as stated by counsel does not treat the main Watson patent as prior art, except as it requires the invention alleged to be "improved upon" to be considered in determining whether the alleged "improvement" upon it involves inventive faculty, and thus a second invention growing out of the same subject-matter. In the opinions in the following cases (in all of which copending applications were in fact involved, and which impress us as the strongest of the cases cited by defendant) statements are made which on their face lend support to defendant's contention; Westinghouse Co. v. New York Co. (C. C. A. 2) 63 Fed. 962, 972, 11 C. C. A. 528; Thomson-Houston Co. v. Ohio Brass Co. (C. C. A. 6) 80 Fed. 712, 724, 26 C. C. A. 107; Willcox & Gibbs Co. v. Merrow (C. C. A. 2) 93 Fed. 206, 207, 211, 212, 35 C. C. A. 269; Thomson-Houston Co. v. Sterling-Meaker Co. (C. C.) 171 Fed. 111, 112, 113. In none of these cases, however, does the co-pendency of the application appear to have been set up as forbidding the conclusion reached, nor is there anything to indicate that the respective courts had in mind the rule relating to copending applications which we have stated above, and which has received the approval of this court. Moreover, in each of the cases above cited the court was considering and passing upon the validity of the later issued patent, and its language was thus, strictly speaking, obiter, as applied to a case involving a patent earlier issued, and so distinguishable from double patenting. No decision of the Supreme Court directly in point is brought to our attention.

Although the cases cited by defendant give rise to a degree of conflict and confusion, we do not, in view of the considerations to which we have called attention, think we would be justified in accepting them as taking the instant case out of what we believe to be the general and correct rule applicable to copending applications. We are the better satisfied with this conclusion in view of the meritorious nature of the invention of the third claim of the so-called improvement patent; the fact that the extension of the overlapping edges in forming the channel, in connection with their brazing, gives to those two steps a more or less single, although composite character, together with the query whether, in view of the actual nature of the claims of the respective patents in issue here as compared with each other, and the changes made in the course of passing through the Patent Office, too much stress is not laid by defendant upon the characterization of the patent later applied for, but earlier granted, as being for a mere improvement upon the invention of the other patent, which, due to the

nature of its dominant retaining member, defendant has been found not to infringe. We are therefore disposed to find the third claim valid.

We think defendant's construction described herein, in connection with the discussion of Watson's other patent, infringes the third claim of the patent we are now considering, even if (as seems to be the case) one of the edges of the sheet metal from which the tubular part of the frame is constructed is extended (in all of defendant's manufacture) for but a portion of the width of the floor of the channel. The extensions of the metal which form the tube are lapped, and the lapped edges spot-welded or riveted together and "formed in a channel along said tube," and the consequent rigidity, although possibly not as great as in plaintiff's invention, is nevertheless substantial, and is apparently sufficient to prevent torsional strain. The lapping accomplishes the functions of closing and stiffening the tubular part, and stiffening the floor of the recess, and gives opportunity for fastening the contacted edges together. Several claims of the patent under which defendant manufactures describe the "sides of the strip" as "contacting and extending laterally to form a side channel," etc. Spot-welding and riveting clearly are each the equivalent of brazing. The language of the claim does not call for a resilient spline, and such call cannot be implied from the fact that the specification describes and the drawing shows a retaining member in the form of a closed tube, the sides of which, the specification says, "will spring slightly" when pressed into the channel—a construction characterized by defendant as inoperative and useless. The object of the improvement did not extend to the form of the spline, but was confined to means for stiffening and strengthening the frame proper. It is scarcely necessary to add that the alleged superior merit of defendant's structure, in employing spot-welding, instead of soldering (thus enabling a higher firing of the japan), and the ability to ship the frames in the "knock-down," cut to lengths and ready for assembling, is quite unimportant.

The bill must be dismissed as to patent No. 956,239, and as to the first and second claims of patent No. 836,475. According to the practice indicated in Herman v. Youngstown (C. C. A. 6) 191 Fed. 579, 588, 112 C. C. A. 185, plaintiff may have 30 days after the filing of the mandate below, or such further time as the District Court may allow, in which to show that the first and second claims of patent No. 836,475, found in this opinion to be invalid, have been duly abandoned, and thereupon plaintiffs may have the usual decree for injunction and accounting as to the third claim of that patent.

Appellants will recover their costs of this court. The record is accordingly remanded to the District Court, with directions to enter a decree in accordance with this opinion, and to take further proceedings not inconsistent therewith.