## TOLEDO SCALE CO. v. COMPUTING SCALE CO.

(Circuit Court of Appeals, Sixth Circuit. January 14, 1926.)

No. 4218.

1. Patents ⬥⟐328— 839,736, claims 1–4, for weighing scale, held invalid for lack of invention.

Patent No. 839,736, claims 1–4, for weighing scale, *held* invalid, as not involving patentable invention, which had not been dedicated or abandoned to public.

2. Patents ⬥⟐66—Patentee's earlier patent is not necessarily prior art as to his subsequent invention.

In determining patentability, the patentee's earlier patent, published less than two years, is not a part of the general prior art, but is a dedication of whatever might have been claimed or reserved, but was not, and of further specific forms not involving further invention.

3. Patents ⬥⟐120, 136—Patentee's remedy for insufficiency in claims is reissue, and not another specific patent.

Patentee's remedy for insufficiency in claims of patent is reissue, and not another specific patent.

Appeal from the District Court of the United States for the Southern District of Ohio; John E. Sater, Judge.

Suit by the Toledo Scale Company against the Computing Scale Company. Decree for defendant, and plaintiff appeals. Affirmed.

Wilber Owen, of Toledo, Ohio (Rector, Hibben, Davis & Macauley, of Chicago, Ill., Border Bowman, of Columbus, Ohio, and C. O. Marshall and Wilber Owen, both of Toledo, Ohio, on the brief), for appellant.

Drury W. Cooper, of New York City, and John M. Zane, of Chicago, Ill. (McMahon, Corwin & Landis, of Dayton, Ohio, on the brief), for appellee.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

DENISON, Circuit Judge. [1] This is the usual infringement suit on claims 1, 2, 3, and 4 of patent No. 839,736, December 25, 1906, to the Toledo Company, upon an application filed April 9, 1901, by De Vilbiss. The bill was dismissed upon final hearing in the court below, by an opinion discussing the defenses of anticipation by the defendant, adjudication as the result of litigation between the parties in the Seventh circuit, and estoppel as the result of plaintiff's delay and voluntary dismissal of a similar former bill. Passing by these defenses without intimation of opinion, we conclude that the decree should be affirmed, because the patent, as to the claims sued upon, did not involve any patentable invention which had not been dedicated or abandoned to the public.

It may be said that automatically weighing scales were, at an earlier time than is here critical, of two classes: Those where the tendency of the suspended weight-carrying platform or "pan" to give way downwardly was met by an automatically increasing spring resistance; and those similarly employing, with a base-supported platform, an automatically increasing weighted lever resistance, as a pendulum. In each case the up and down motion of the platform had been converted into a rotary movement of a pivoted index finger, moving over a visible row of figures, and thus indicating price, or weight, or both. In this state of the art Smith, by reissue 11,536, of April 28, 1896, employed as his indicating means, in a "pan" scale, a light-weight horizontal cylinder, revolving inside of a windowed drum. The up and down motion of the pan caused the cylinder to revolve, and display, through the window, the right figure. By the proper combination of printed figures upon the cylinder, it showed, not merely the weight, but the computed price.

In 1900, and as evidenced by patent No. 649,915, of May 22, 1900, De Vilbiss devised a combination of figures displayed upon a fan-shaped surface beneath the rotary oscillations of the index finger, whereby this finger would thus indicate the computed price as well as the weight. He showed a style of platform carrying pivoted scale beam, provided with a manually adjustable, but otherwise unchangeable, counterbalance for the weight of the fixed parts, and provided also with a weighted lever (pendulum) giving automatically adjustable counterbalance for the variable platform load. His originally more limited claims were expanded by reissue No. 12,137 so that they covered fairly broadly the combination of this indicating means with this means of platform operation. The general equivalence of the spring-suspended platform and the scale beam plat-

form, as a means of operating the indicating device, is made plain, if it were otherwise doubtful, by De Vilbiss himself, in his patent of March, 1899, where he says that it is "clear" that either pattern may be used, if desired.

The patent in suit was applied for before the reissue application for Smith's 12,137, but did not get through until three years after the reissue. By the patent in suit De Vilbiss substituted the computing cylinder of the Smith patent for the fan-shaped computator of De Vilbiss, 649,915; or, it may perhaps as well be said, he substituted the weighted lever control platform of his 649,915 for the spring-suspended platform of Smith. In each of the two earlier patents, as in the patent in suit, the indicating and computing mechanism was operated by the downward pull of the platform operated beam or bar. It is obvious now, and we think it was in 1901, that the spring-suspended platform will operate either a fan-shaped or a cylindrical computator; that the same is true of the base-supported platform; and likewise that the cylinder may be operated by either style of platform. It follows that invention was then to be found, not in the mere substitution of one computing apparatus for another, but rather in the changes and adaptations necessary to make the substitution effectual.

We do not discover any substantial change or adaptation of parts involved in substituting, in De Vilbiss' second, the Smith computator (cylinder) for the fan-shaped computator of De Vilbiss' first. In Smith, a vertical rack-carrying bar was directly attached to and depressed by the spring-supported platform. In the patent in suit, the same depending rack bar is pivoted to the downwardly moving scale beam of the base-supported platform of De Vilbiss' first. It is hardly to be contended that this change would be, of itself, a patentable invention.

[2, 3] The invalidating view of this situation is met by the claim that De Vilbiss' first is not a part of the "prior art," upon the basis of which we should judge the patentability of De Vilbiss' second. It is said, and truly, that the earlier De Vilbiss patent had not been a publication for more than two years at the time of the later application, and that what De Vilbiss had himself earlier constructed cannot be considered as the prior invention of another. With this general view we are in accord. Sandy MacGregor Co. v. Vaco Grip Co. (C. C. A.) 2 F.(2d) 655, 656, 657; Higgin v. Watson (C. C. A.) 263 F. 378. But this is not a case of simultaneous patents, nor even of a later patent based upon an application made before the earlier patent issued; and considerations controlling in those cases are more or less inapplicable here. If a patentee later makes an improvement which, merely as an improvement, is patentable, he is entitled to the patent just as any one else would be; the difficulty comes when, to sustain the patentability of the later application, he must rely solely upon the same inventive thought which gave life to the first patent.

As pointed out in the MacGregor Case, there seems no reason why two varying specific forms of the same genus may not be separately claimed by simultaneous patents, even though one would not evidence invention over the other, if they were by different applicants; but in such a case there is opportunity to cover them both by one broad claim. In these De Vilbiss patents, if there was inventive merit in the broad thought of combining his base-supported platform with a computing apparatus, though this is at least doubtful, it could have been covered by a generic claim in the first patent. This was not done, either by the original or by the reissue which was later taken. Whether by this course there was a dedication to the public of a further form, beyond that specifically shown and claimed, depends upon the existence of an inventive step between the two; and thus, under such circumstances as here exist, we come in another way to the question of whether the second showed patentable invention as compared with the first. We have already indicated a negative answer. The remedy for any insufficiency was reissue, not another specific patent.

It follows that the decree must be affirmed.