## EDWARD G. BUDD MFG. CO. v. C. R. WILSON BODY CO.

Circuit Court of Appeals, Sixth Circuit.
October 19, 1927.

No. 4729.

**1. Patents ⬤⇒328—Ledwinka, 1,143,635, claims 3, 9, 10, 14, 19, 22, 23–31, 38, 39, for automobile body, held invalid.**

Ledwinka patent, No. 1,143,635, claims 3, 9, 10, 14, 19, 22, 23–31, 38, 39, for all steel or metal automobile body, *held* invalid for lack of invention and patentable novelty.

**2. Patents ⬤⇒328—Ledwinka, 1,275,274, claims 1, 2, 11, for metal automobile body, held not infringed.**

Ledwinka patent, No. 1,275,274, claims 1, 2, 11, for all steel or metal automobile body with box girder at the bottom of the shell, *held* not infringed.

**3. Patents ⬤⇒328—Ledwinka, 1,275,274, claims 14, 15, for all steel or metal automobile body, held invalid.**

Ledwinka patent, No. 1,275,274, claims 14, 15, for all steel or metal automobile body with a box girder at the bottom of shell, *held* invalid for lack of invention and patentable novelty.

**4. Patents ⬤⇒328—Ledwinka, 1,214,932, claim 4, for vehicle top iron support or bracket, held invalid.**

Ledwinka patent, No. 1,214,932, claim 4, for vehicle top iron support or bracket, *held* invalid for lack of patentable novelty.

**5. Patents ⬤⇒328—Ledwinka, 1,255,323, claims 1, 2, 3, 7, 8, for removable upholstery, held not infringed.**

Ledwinka patent, No. 1,255,323, claims 1, 2, 3, 7, 8. for removable upholstery for vehicles, *held* not infringed.

**6. Equity ⬤⇒409—Force and effect of master's findings depend on nature of case and terms of reference.**

Force and effect of a master's findings depend on the nature of the case and questions of fact involved and terms of reference.

**7. Equity ⬤⇒409—District Court had right to review master's findings of fact after reference for purpose of taking testimony.**

Where reference, although by consent, was merely for purpose of taking testimony, with instruction to report such testimony in full together with master's findings of fact and law, the District Court had full power thereafter to review master's findings of fact.

**8. Equity ⬤⇒409—Master's findings, constituting only deductions from established facts, do not carry great weight.**

Where findings of master are only deductions from other established facts as to which there is no substantial dispute, the findings do not carry any great weight.

**9. Equity ⬤⇒409—Master's findings on validity and infringement of patent being questions of law, District Court is justified in reviewing them.**

Questions of validity and infringement of patent constitute questions of law rather than findings, depending on conflicting evidence, justifying district court in reviewing master's findings after reference, and, if not found to be correct, in disapproving the same.

Appeal from the District Court of the United States, for the Southern Division of the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Patent infringement suit by the Edward G. Budd Manufacturing Company against the C. R. Wilson Body Company. From the decree (7 F.[2d] 746), plaintiff appeals. Affirmed.

Melville Church, of Washington, D. C. (S. E. Darby, of New York City, A. C. Angell, of Detroit, Mich., and J. P. Tarbox, of Philadelphia, Pa., on the brief), for appellant.

Wm. J. Belknap, of Detroit, Mich. (Clarence B. Zewadski and Whittemore, Hulbert, Whittemore & Belknap, all of Detroit, Mich., on the brief), for appellee.

Before DENISON and MOORMAN, Circuit Judges, and WESTENHAVER, District Judge.

WESTENHAVER, District Judge. [1-5] This appeal involves the validity and infringement of the following United States letters patent: (1) 1,143,635, issued June 22, 1915, to J. Ledwinka, of which claims 3, 9, 10, 14, 19, 22, 23 to 31, inclusive, and 38 and 39 were in issue and were all held below to be invalid for lack of invention and patentable novelty; the subject-matter of the patented invention being an all steel or metal automobile body, consisting of a skeleton frame and shell integrally joined together. (2) 1,275,274, issued to J. Ledwinka August 23, 1918, of which claims 1, 2, 11, 14 and 15 only were in issue and as to which claims 1, 2, and 11 were held not to be infringed, and claims 14 and 15 to be invalid for lack of invention and patentable novelty; the subject-matter of the patented invention being also an all steel or metal automobile body with a box girder at the bottom of the shell as a substitute for the skeleton frame. (3) 1,-214,932, issued to J. Ledwinka February 6, 1917, of which claim 4 only was in issue, and was held below to be invalid for lack of patentable novelty; the subject-matter of the patented invention being a vehicle top iron support or bracket. (4) 1,255,323, issued to J. Ledwinka February 5, 1918, of which claims 1, 2, 3, 7, and 8 were in issue and all of which were held below not to be infringed; the subject-matter of the patented invention being a removable upholstery for vehicles,

especially useful with automobile bodies. Originally the suit also involved the validity and infringement of a trade-mark in the words "All-Steel" as applied to automobile bodies, and unfair trade practices and competition. After issue joined, a reference was made to a special master, with powers later to be stated. His finding was that all the claims in issue of the several patents were valid and infringed, and that, while plaintiff's trade-mark was invalid, as purely descriptive, and that the words had not acquired a secondary meaning, nevertheless the defendant had been guilty of such unfair trade and competition that it should be enjoined from using those words in marketing its product. Upon adequate exceptions and after full hearing, the District Judge sustained the master's findings of fact and conclusions of law with respect to the validity and infringement of plaintiff's trade-mark and with respect to the unfair trade and competition, but disapproved certain of the master's findings of fact and conclusions of law with respect to the validity and infringement of the several patent claims in issue. A decree in defendant's favor to the effect above stated, was entered. Defendant acquiesced in the decision and decree so far as the same was adverse to it. Plaintiff prosecutes this appeal for the purpose of reversing the decision and decree so far as the same relates to the patent claims held invalid or not infringed.

[6] The order of reference was entered by consent of parties. The reference was for "the purpose of the taking of testimony therein on all issues and on behalf of the plaintiff and the said defendant, the master to report the testimony in full to the court, together with his findings of fact and law." Appellant now urges that, inasmuch as questions of invention and patentable novelty are questions of fact, the master's findings with respect thereto are conclusive and should have been adopted by the District Court. This contention is based on Kimberly v. Arms, 129 U. S. 512, 9 S. Ct. 355, 32 L. Ed. 764, Davis v. Schwartz, 155 U. S. 631, 15 S. Ct. 237, 39 L. Ed. 289. The force and effect of a master's findings of fact depend on the nature of the case and of the questions of fact involved, and the terms of the reference. See Dickinson v. Thum (6 C. C. A.) 8 F.(2d) 570, where these differences are stated and the authorities collected and cited. The question here is whether the order of reference falls within the principles of Kimberly v. Arms or within the principles of some of the other cases, particularly Oteri

v. Scalzo, 145 U. S. 578–589, 12 S. Ct. 895, 36 L. Ed. 824; Denver v. Denver Union Water Co., 246 U. S. 178, 38 S. Ct. 278, 62 L. Ed. 649. In Kimberly v. Arms, it was said, in substance, that a reference of an entire case for a determination of all its issues cannot be made without the consent of parties, and, when so made by such consent, the reference is in the nature of a submission of the controversy to a tribunal of the parties' own selection, and that the findings of a tribunal thus selected are not to be set aside and disregarded at the mere discretion of the court. Even so, it is further said, such findings, while presumptively correct, are subject to review when there has been manifest error in the consideration given to the evidence or in the application of the law, but not otherwise. It was accordingly held that the master's findings should have been treated as correct and binding and not disturbed "unless clearly in conflict with the weight of the evidence upon which they were made."

[7] We are of opinion that the present case is not within the reason or holding in Kimberly v. Arms. The reference therein was to hear and decide all the issues arising in the case. Here the reference, although by consent, was merely for the purpose of taking the testimony, with instructions to report that testimony in full, together with the master's findings of fact and law. The parties did not consent that the master should determine all the issues, but merely that he should hear all the evidence and report the same in full. The terms of the reference repel the inference that either the parties or the District Court intended to substitute a special tribunal to hear and decide the issues without reserving a right to review the same. Hence we are of opinion that this case falls within the principles and holding of Oteri v. Scalzo, supra, Denver v. Denver Union Water Co., supra, and similar cases. In our opinion, the District Court had full power to review the master's findings of fact in accordance with the principles usually applied in similar situations.

[8, 9] The master's findings of fact upon the patent branch of this case do not rest upon conflicting evidence, as that term is ordinarily understood. Questions of invention or patentable novelty or of infringement are, in a certain sense, issues of fact. But in many cases, and particularly in this case, these findings are only deductions from other established facts as to which there is no substantial dispute. In such a situation, a master's findings do not carry any great weight. As was said in Ohio Valley Bank v. Mack (6,

C. C. A.) 163 F. 155, 24 L. R. A. (N. S.) 184: "The judge, having the same facts, may as well draw inferences or deduce a conclusion as the referee." There was no question of priority of invention depending upon conflicting testimony. There was no dispute as to what the prior art showed. There was no dispute as to the nature of the inventions covered by the several patents. No extrinsic evidence was needed to explain the terms of the art or to apply the descriptions of the patents to the subject-matter. The situation was in effect the same as in Hurin v. Electric Vacuum Cleaner Co. (6 C. C. A.) 298 F. 76, and Singer Mfg. Co. v. Cramer, 192 U. S. 265, 24 S. Ct. 291, 48 L. Ed. 437. In the first case, a verdict was directed in defendant's favor. In the second case, the Supreme Court reversed the lower court because it did not direct a verdict in defendant's favor. In both cases it was held that, where the prior art was not in dispute and no extrinsic evidence was needed to explain the terms of that art or to apply the descriptions of the patent to the subject-matter, the question of whether invention was present, or whether the patent claims covered an infringing structure, raised no issue of fact to be submitted to a jury. Therefore, even if we were in doubt, as we are not, as to the proper construction of the consent order of reference and the District Court's reserved right to review the master's findings of fact, we should regard all questions of validity and infringement as so far being questions of law rather than findings depending on conflicting evidence, that the court below was justified in reviewing the same, and, if not found to be correct, in disapproving the same.

Coming to the meritorious questions involved on this appeal, we find ourselves in accord with the conclusions of the learned District Judge. We have duly weighed all considerations urged in favor of invention or patentable novelty or infringement. Plaintiff's claims of commercial success, previous efforts and failures of other inventors, and the ultimate disappearance from the market of prior all steel or metal bodies, are not without weight, but are not controlling. Giving thereto such weight as, under the circumstances, they are entitled, we are led to the same conclusion upon all questions of validity and infringement as was reached by the court below. No useful purpose would be subserved by reviewing the prior art and re-examining the patents in issue. That labor has been adequately performed by the District Judge. While we might take a dif-

ferent view of some of the prior art and attach greater or less weight to some considerations than was given below, we are, on the whole, satisfied with the District Judge's discussion of the questions involved, in so far as the same are embodied in the subjoined extracts from his opinion.

The decree of the court below will be affirmed, with costs in this court. This conclusion renders unnecessary any consideration of appellee's motion directed to the supplemental record embodying the testimony relating to the trade-mark and unfair trade branch of the case.

Extracts from Opinion of District Judge.

Patent No. 1,143,635 relates to the construction of an automobile body, the drawings illustrating that type known in the trade as the "torpedo body." The torpedo type of body was old in the art. The torpedo body of the prior art had a framework consisting of spaced side sills extending longitudinally of the body, crossbars for connecting the side sills, and vertically extending doorposts carried by the side sills. The body side sills, the crossbars, and the door posts were of wood and were rigidly secured together to form a skeleton frame for the taking of strains and stresses to which the body would be subjected in use. Around this skeleton frame was placed a sheathing or shell of sheet metal composed of a tonneau or rear seat section, and intermediate or front seat section, and a cowl section. These shell sections were provided with flanges which engaged around the edges of and were secured by nails or screws to the doorposts, and the bottom edges of the section were flanged inwardly underneath the side sills and attached thereto. An automobile body composed of a skeleton frame of wood and a shell or sheathing of metal is known in the trade as a "composite body." The composite type of body is the construction that has been, and today is, in most general use.

The shell or sheathing of the automobile body shown in the drawings of the Ledwinka patent, 1,143,635, like the shell or sheathing of the prior art composite body, is of metal, also, like the shell of the composite body, it is made up of a tonneau or rear seat section, an intermediate or front seat section, and a cowl section. Instead of employing wood for the frame of patent 1,143,635, metal is used, but the general arrangement of the metal frame is the same as that of the wooden frame; namely, there are spaced side sills that extend longitudinally of the body, crossbars which secure the side sills together, and

vertically extending doorposts carried by the side sills. These parts of the skeleton frame are rigidly secured together. Flanges are formed on the shell sections to engage around the doorposts and to engage underneath the side sills. The skeleton frame parts are secured together, and the shell sections are attached to the frame by welding.

The general distinction between the composite torpedo type of body of the prior art and the torpedo type of body of patent 1,143,635 is that in the former the skeleton frame is made of wood, while in the latter it is made of metal, for the shell or sheathing in each case is of metal of the same gauge. Plaintiff urges that, by having the frame and the shell body of metal, these parts may be welded together to form a strong and rigid structure throughout. It is the contention of the plaintiff that this patent in suit should be given a very liberal construction, and, if it is entitled to the breadth of protection which the plaintiff seeks thereunder, the patent will be quite dominating. It is not disputed that the plaintiff has built up a large business in the manufacture of automobile bodies composed of all metal, but, while the plaintiff may have been quite successful in its exploitation of all-metal automobile bodies, it was not the first to form the skeleton frame of metal nor the first to form the shell and the skeleton frame body of metal and then weld or rivet these parts together to form a rigid structure throughout.

There are many prior art patents showing vehicle skeleton frames made entirely of steel or other metal pressed or otherwise shaped into the desired form. The parts of these metal frames were rigidly secured together by riveting or welding to form a rigid skeleton frame which took the stresses and strains. Likewise, the prior art patents disclose frames of all metal and shell portions of all metal, the shell and frame parts being rigidly connected together as by riveting or welding. As examples, note the United States patent to McLaughlin 722,611 of 1903, the British patent No. 12,992 or 1895, and the Ledwinka patent 1,139,457 of 1915, the structure of which was manufactured and sold more than two years before June 17, 1914, the date of filing of patent 1,143,635.

There are in the prior art a number of prior use bodies made entirely of metal, some being for commercial automobiles and others for pleasure cars.

Before Joseph Ledwinka, patentee of patent No. 1,143,635, entered the employment of plaintiff company, he was in the employ of the Hale & Kilburn Company of Philadelphia, Pa., as designer of all-metal automobile bodies. He left the employ of the Hale & Kilburn Company on or about June 6, 1912, or more than two years prior to the filing date of patent No. 1,143,635 and before he left the Hale & Kilburn Company manufactured and sold different types of bodies made entirely of steel; one type of body being represented by Ledwinka patent 1,139,457, other types of bodies being for trucks, light delivery cars, etc. These bodies made by Hale & Kilburn had a frame composed of longitudinal sills, cross members, and vertical posts. The metal panel or shell sections were secured to the frame member. The latter were rigidly attached together and to the panel or shell sections by riveting or welding.

Hale & Kilburn not only manufactured the Ledwinka designs of all steel, but this concern manufactured touring car bodies of all metal, coupé bodies made entirely of metal, and one all-metal limousine body for the Hupp Motor Company of Detroit, Mich. These bodies were the designs of E. A. Nelson, engineer of the Hupp Motor Company. Several thousands of the touring car bodies (referred to in the record as the Hupp–32) were made and sold; the Hale & Kilburn Company being in large production of the Hupp–32 body before patentee Ledwinka left their employ, but the first coupé was not shipped until after he had become connected with the plaintiff company. Likewise, while the order for the Hupp limousine was received before Mr. Ledwinka left the Hale & Kilburn Company, it was not completed until after he severed his connection with that company.

Each of these Hupp structures was composed of all metal, the sheathing or shell being made from metal stampings and the frame members being of steel. Welding and riveting were used for securing the parts together. The Hupp—32 body differs from the usual automobile body, in that it was not provided with body side sills separate from the chassis sills. The tonneau section, the front seat section, and the cowl section were made in separate units, and these units were bolted to the chassis sills. When assembled upon the chassis sills, the latter also acted as body sills. Each of the sections of the Hupp –32 had metal frame members and metal shell members, and welding was employed for securing these members together.

The plaintiff places great emphasis upon the fact that the body of the patent in suit is a complete unit, but in this regard the patent does not depart from the composite type of

torpedo body as exemplified by the Cadillac body and other of the prior art structures.

Novelty cannot be predicated upon a skeleton frame of all metal nor was it new to form a shell or sheathing of metal. The prior art also contained examples of structures having both the skeleton frame and the sheathing of metal; such examples being found in the prior art patent before mentioned and in the bodies which were marketed from the designs of the patentee Ledwinka by the Hale & Kilburn Company more than two years prior to the date of filing of the application for the patent in suit, No. 1,143,635. Riveting and welding were used according to the patentee's testimony in securing together the parts of these Hale & Kilburn bodies. Sometimes one mode of attachment was employed and sometimes the other, depending upon the kind of joint desired.

I am unable to find any new step or definite thing which Ledwinka did upon which invention can be predicated. The situation gives the impression that, after the art had developed, the patentee, Ledwinka, has endeavored to go back and cover by a patent that which had become public property. A reference to the claims further convinces that he is endeavoring to bring under his patent those things which belong to the public.

As before stated, the plaintiff seeks to have the claims of this patent broadly construed. At the argument plaintiff used claim 19 as representative of the claims sued upon. This claim is as follows:

"19. An automobile body comprising a skeleton frame having side members each made in one piece and having vertically extending integral portions to form doorposts, means to connect said side members together, and a shell or sheathing applied and integrally secured to the exterior surface of the vertically extending integral portions of said skeleton frame."

The claim does not specify the material from which either the skeleton frame or the shell is made, and, except for the words "integral" and "integrally," the claim finds literal response in the Cadillac composite body of the prior art. If plaintiff's position is correct, and by the use of these words the claim should be interpreted as for a structure having the frame and shell composed of metal, the claim would not patentably differentiate from the Cadillac composite body. There could be no invention in making the skeleton frame of the Cadillac body of metal instead of wood. Metal skeleton frames were old in the art. In the Hale & Kilburn

prior art commercial bodies the skeleton frame had one piece side members which carried vertical posts and there were crossbars or braces extending between the side members. The metal sheathing or panels were secured to the skeleton frame; welding and riveting being employed as desired for securing the various parts together.

As welding was old and well known as a means for securing together the various parts of an automobile structure, even if the claim is restricted to a structure in which welding was employed as a securing means, welding could not add patentability to the claim. Riveting and welding are recognized mechanical equivalents. Higgin Mfg. Co. v. Watson et al., 263 F. 378–387 (C. C. A. 6).

The patentee appreciated that the parts might be secured together in ways other than welding since the specification describes the parts as secured together "by welding or otherwise." The patentee made no attempt in his specification to predicate invention upon welding, and, of course, he could not do so, and in plaintiff's commercial structure as exhibited to the court riveting is used to secure certain of the parts together.

It is not necessary to discuss in detail any of the remaining claims in suit, except claims 3 and 38, since both the plaintiff and defendant adopted claim 19 as a fair example of the remaining claims which include the skeleton frame and shell. Defendant distinguished between claims 3 and 38 and the remaining claims in suit in that claims 3 and 38 do not include any portion of the skeleton frame. These claims are anticipated by the shell of the Cadillac composite body, which had the side portions welded so that it was formed into one continuous structure, and also by various prior art patents such as the patent to Apel, 869,719, Thomas and Moore, 872,031, and others. At the hearing, plaintiff sought to withdraw the claims 3 and 38, but, since these claims were held patentable by the master, defendant is entitled to have the claim passed upon by the court.

Each and all of the claims in suit of the Ledwinka patent, No. 1,143,635, I find to be invalid.

\* \* \* \* \* \* \*

Patent No. 1,275,274 also related to the construction of an automobile body. It differs in the main from the structure of patent No. 1,143,635, in that the skeleton frame of the earlier patent is dispensed with. In the specification of patent No. 1,275,274 is the following statement:

"In my patent No. 1,143,635, granted June 29, 1915, I have shown, described, and

claimed a structure of sheet metal body for automobiles in which is employed a skeleton frame to take the stresses and strains and a shell applied to the exterior surface of the frame to give external appearance to the body:

"In my present structure I have dispensed with the skeleton frame and so construct the shell and its associated members as to secure the desired rigidity, strength, and sturdiness of the body in the shell structure. In other words, in accordance with my present invention, I propose to eliminate the skeleton frame of my former patent, and to so construct the shell and strengthening parts to be applied thereto and associated therewith as to enable it to take the stresses and strains, thereby greatly simplifying the structure, reducing the weight of the completed body, reducing the number of parts required, and enormously reducing the cost of production and assembly of the parts.

"I also propose to so construct the body shell as to afford additional strength and rigidity along its bottom longitudinal edge by the application thereto of sill members in such manner as to form therewith, in effect, a box girder which secures great strength to the body structure."

Claims 1 and 2 are directed to reinforcing the bottom longitudinal edge of the body shell so that the body shell and its reinforcement form a box girder. Claim 1 is as follows:

"An automobile body shell built up of sheet metal stampings pressed to the shape and contour of the body lines to give external appearance to the body; said stampings being integrally united, and having an inturned flange at their lower edges, and a longitudinally extending stamping supported upon said inturned flange and secured thereto and to the vertical portions of the body shell stamping to form a box girder with the body shell whereby the body shell is reinforced to enable it to wholly take the strains of usage."

There is only one construction of automobile body made by the defendant that plaintiff relies upon in its proof of infringement. This structure for the purpose of infringement under patent No. 1,143,635 is said to have a skeleton frame to take the stresses and strains; yet patent No. 1,275,-274 had for its object to dispense with the skeleton frame. The defendant's structure has longitudinally extending body sills that are connected together by cross members to form what might be termed a base. The tonneau section, the front seat section, and the cowl section are made as separate units and assembled upon the base frame. When so assembled, the shell and frame members of these sections are rigidly connected with the base frame as by welding. After the various parts of defendant's structure are assembled and welded together, there is a body composed of a skeleton frame and a shell. While the lower edge of the shell sections are flanged underneath the side sills, it cannot be said that these side sills form a box girder with the body shell so that "the body shell is reinforced to enable it to wholly take the strains of usage." Defendant's structure has a complete sill apart from the body shell, while in the structure of the Ledwinka patent, No. 1,275,274, the body shell is a part of the sill. Defendant's structure does not have a longitudinally extending stamping which forms a box girder with the body shell whereby the body shell is reinforced to enable it to wholly take the strains of usage, but, on the other hand, it employs a skeleton frame to take the stresses and strains.

It is not new with patent No. 1,275,274 to reinforce the lower edge of the body. The patent to Adams, No. 1,190,112, March 10, 1914, discloses the use of an angle iron reinforcement for the lower edge of the body shell. The patent to McLaughlin, No. 722,-611, March 10, 1903, employs such a reinforcement in tubular form. The Hupp coupé and the Hupp limousine show reinforcements in the form of box girders. This prior art requires the claim to be very narrowly construed, in fact, makes the question of patentability very doubtful. I therefore find claim 1 not infringed; also claim 2, as it described substantially the same structure as claim 1.

Claim 11 is directed to a particular formation of doorsill. The claim does not read upon defendant's structure, and, in view of the prior art, this claim is not entitled to the range of mechanical equivalents which plaintiff seeks therefore in order to find infringement. Box girders at the doorsills are found in the Hupp coupé, the Hupp limousine, and in the prior art Chevrolet body. Defendant's structure does not infringe claim 11.

Claims 14 and 15 are anticipated by the British patent to Busch, No. 9174 of 1912, and the Hupp–32. It is impossible to distinguish these claims therefrom. I therefore find claims 14 and 15 invalid.

Patent No. 1,255,323 is for removable upholstery for vehicles. In the structure of the patent the upholstery is constructed so

as to be removable as a unit from the body. The upper edge of the body shell is provided with a channel-shaped portion within which is arranged the top edge of the upholstery. The bottom of the detachable upholstery is seated in fork-shaped supporting arms that are adjustably mounted in the brackets. By adjusting these fork arms the upper edge of the upholstery is forced home in the inverted channel and held in place therein by the forks or supports. By reversing this operation—that is, by backing off the supports—the upholstery may be detached and removed from the body. In the defendant's structure the upper edge of the body shell is not provided with a channel for receiving the upholstery. The shell has an apertured flange at its top and the upholstery carries pins that are inserted in the holes in the flange. The top edge of the upholstery in defendant's structure is without the flange edge of the shell rather than within a channel-shaped flange, as in the Ledwinka patent, No. 1,255,323. No arms are employed by the defendant for adjustably supporting the upholstery. The latter merely rests upon the seat pan. To position the upholstery in place in defendant's structure, the upper edge of the upholstery is arranged so that the pins engage the apertures in the flange on the shell, and the lower edge of the upholstery is then moved inwardly towards the shell until it rests upon the seat pan.

Ledwinka did not invent detachable upholstery for vehicles. That was old in the prior art. * * * Likewise, the prior art shows it to be old to retain the upper edge of the detachable upholstery in place against a flange or abutment. * * * In view of this art, if the claims in suit are to be saved, they must be very narrowly construed.

I find defendant's structure does not infringe, as it does not have a channel at the upper edge of the shell within which the upper edge of the upholstery is arranged, nor does it have the equivalent of the adjustable fork arms. The claims must be limited to these features in order to be valid.

Ledwinka patent, No. 1,214,932, is upon a support for a vehicle top iron. As top irons have been used since the earliest carriage days, any novelty in the structure of this patent must reside in the more detailed features thereof. In the structure shown in the drawings, a strap is applied to the inner surface of the shell of the body and to this strap is attached a supporting member which also engages the inner face of the body shell. The top iron proper consists of a shouldered member, which has a threaded portion that extends through the shell and the supporting member. A nut is applied to the threaded end of the top iron for clamping the latter in place.

Claim 4, which is the only claim in suit, is as follows:

"4. In a top iron support for vehicles, and in combination with the vehicle body shell, a strap applied to the inner surface of said shell, a supporting member also applied to the inner surface of said shell and secured to said strap, a supporting iron having a shouldered end extending through the shell from the outside, and through said supporting member, and a nut applied to said iron to clamp the parts together."

Defendant urges that the top iron and its support as used in the Hupp–32 is a complete anticipation. In the Hupp–32 structure there is a strap applied to the inner surface of the shell and also a supporting member applied to the inner surface of the shell and secured to the strap. The top iron proper, or supporting iron, has a threaded end. This threaded end extends through the shell and engages a threaded bushing carried by the supporting member. The threaded bushing is, of course, the full equivalent of a nut.

Claim 3 is held invalid, in view of the top iron and its support found in the Hupp–32. In view of this finding, it is not necessary to consider the question of infringement.