**REED ROLLER BIT CO. et al. v. BREW- STER CO., Inc., et al.**

No. 6872.

Circuit Court of Appeals, Fifth Circuit.

June 23, 1933.

Tinsley Gilmer, of Shreveport, La., and J. Vincent Martin, of Houston, Tex., for appellants.

Jesse R. Stone and Lester B. Clark, both of Houston, Tex., and Yandell Boatner and Charles B. Emery, both of Shreveport, La., for appellees.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

SIBLEY, Circuit Judge.

Appellant Reed Roller Bit Company is a manufacturer of such implements as are here involved, and is the licensee of the other appellants under patents owned by them, to wit, Nos. 1,235,883 and 1,295,134, granted to Dodds August 7, 1917, and February 25, 1919, and No. 1,847,424, granted to appellants Barrett & Robichaux on March 1, 1932. The appellants complained of infringement of these patents by the Brewster Company and Oksenholt Core Barrel Corporation, appellees, who, denying infringement, contended successfully that those claims of the patents which were relied on were invalid. We pass by as did the District Court the question of infringement, because we also think the monopoly asserted not to be maintainable. The field involved is the drilling of deep wells for oil, gas, and the like, and the particular art is the obtaining from the bottom of the well as it is drilled samples or cores of the material penetrated. The art is an old one, and the patents do not claim to be pioneers, but are only for improvements in combinations of mechanical elements used. The drilling is done by a long and ever-lengthening tubular drill stem rotated from above ground and having a bit or cutting tool on its lower end. In its operation mud-laden water called slush is pumped down the inside of the tube passing under and through the bit, cooling it and cleaning out the cuttings and washing them up to the surface around the outside of the drill stem. The flow may be reversed, passing down outside and coming up inside. At first the drill stem had to be taken out to obtain a sample of material at the bottom; but at least since patents granted to Bullock, May 3, 1892, Nos. 473,907, 473,-908 and 474,080, the sample or core has been obtained by drawing a "core barrel" up through the drill stem without removing the stem. Bullock's patents were adapted especially to hard cores as of rock. Those here involved relate especially to softer and more friable material. Many patents show various forms of and devices relating to core barrels. Dodds claimed novel improvements by

his two patents in 1917 and 1919, but no apparatus is shown to have been made or operated under them. In 1928, Barrett and Robichaux were working on their patent for improvements, never having seen the Bullock or Dodds patents. The Dodds patents came to their knowledge and were bought up by them, and their patent as modified was granted March 1, 1932. Since 1928, the appellee Brewster Company has been working on a similar type of core lifters, and, though it claims to be still experimenting, it has some in use which are asserted to infringe claims 3 and 5 of first Dodds, 1, 2, and 3 of second Dodds, and 1, 7, and 8 of Barrett and Robichaux. These claims are all for combinations of quite similar elements. Claim 3 of first Dodds reads: "The combination with a drill stem and a bit secured thereto having a central bore, of a tubular member fixed in said stem and extending through said bore below the bit, a boring tool carried by the lower end of said member, and a valve within said member permitting the passage of fluid upwardly there-through." Claim 5 omits fixation and adds: "And means for detachably securing said member in position in said stem." The detachability is, of course, necessary if the core barrel, which is the "tubular member" referred to, is to be withdrawn without pulling out the drill stem also. The projection of the core barrel bit through the main bit is to protect the core from being washed by the slush as the slush is pumped through the main bit. The valve is to permit the escape of slush upwardly from the core barrel as the core enters below and to prevent the back flow of the slush when pumped down or while the core barrel is being drawn up. The disclosure in this patent shows also at the bottom of the core barrel, in the wings of its augerlike boring tool which passes the core material into the core barrel, hinged flaps or gates which allow its entrance, but do not permit its falling back out, and which thus trap it.

■ Claims 1, 2, and 3 of the second Dodds patent describe substantially the same elements except that they claim what was omitted from the claims of the former patent that there be a trap to permit entrance of the cuttings into the core barrel and to retain them, and they refer more at length to means connecting the core barrel with the stem to rotate the former which can be released for its withdrawal. The particular devices are not claimed, but only the general idea of having such in the combination. It is urged, and we think correctly, that these added elements,

disclosed in substance, though not in exact form, in the first Dodds patent, but not then claimed, cannot be patented afterwards either by Dodds or any one else. If they were of patentable merit, they should have been claimed in the first patent. The patentee might perhaps have sought correction to include them by reissue, but could not have a new patent running from a new date. The later patent is void. Miller v. Eagle Mfg. Co., 151 U. S. 186, 14 S. Ct. 310, 38 L. Ed. 121; Union Typewriter Co. v. L. C. Smith & Bros. Typewriter Co. (C. C. A.) 181 F. 966; Toledo Scale Co. y. Computing Scale Co. (C. C. A.) 9 F.(2d) 823. The appellees moreover are not infringing the particular devices disclosed, even if they had been particularly patented.

■ Claims 1, 7, and 8 of patent to Barrett & Robichaux are covered by the claims of Dodds, except that there is mentioned a spring to hold the core barrel against the well bottom which will yield if a hard formation is encountered, allowing the boring tool of the core barrel to be pushed back into the main bit and to be protected by it, with of course longitudinal motion allowed in the means of connecting the core barrel to the drill stem for rotation. The spring for this purpose has not patentable novelty. In the disclosures of the second Dodds patent we find this spring disclosed for the same function: "In case the boring tool should encounter hard formation which it cannot pierce the spring will yield, in effect permitting withdrawal of the boring tool up into the bit which reinforces the tool and prevents it from becoming broken off." The spring also appears in other patents, though the same function is perhaps not attributable to it.

■ The case, therefore, must stand on Dodds' first patent. Its claims above stated are lacking in patentable novelty. The tubular drill rod or stem and the core barrel removable through the tubular drill stem, each having an annular cutting head or bit on it with the core barrel actuated from the drill stem, are shown in the first patent to Bullock in 1892 for drilling in either earth or rock. There is a locking arrangement to hold the core-barrel down while drilling, and in three of the claims projection of it below the drill stem, there called the casing tube, is mentioned. The projection of the core

barrel is to prevent the slush as it runs through the main bit from affecting the core. Though Bullock makes no such statement, the patent to Ameling, No. 997,358, July 11, 1911, which like Dodds' dealt with soft cores, asserted this effect and specially claimed this projection as also did the British patent to Lapp, No. 5,492, September 1, 1910. The second Bullock patent relates specially to rock cores and provides for their retention in the barrel by a contracting ring closing on the core at its bottom end when the barrel is lifted. The means of engaging the barrel with the drill stem are longitudinally slidable, but the bits on the drill stem and barrel are shown flush with one another. Another device for holding the core in the core barrel by flexible fingers projecting inwards and upwards similar in principle to that now used by appellants is shown in Grainger, No. 1,663,757, March 27, 1928, which would not hold very loose material, but might by mechanical skill be easily adapted thereto. A close-fitting trap is shown in the British patent to Lapp mentioned above. Traps are evidently old in the art. The third Bullock patent for earth and rock drilling has the same essential elements as Dodds with different details, the claims again specifying that the core barrel cutting head pass through and beyond the casing tube (drill stem). A ball valve is described on the core barrel to control the slush flow, though it is not claimed as a part of the patent. Such a valve is found in Frisbee, 168,010, September 21, 1875, and in Grainger, No. 1,663,757, March 27, 1928. So in Copelin, No. 1,766,108, June 24, 1930. A vent to let fluid out of the top of the core barrel as the core enters its bottom is obviously necessary. The valve to check back flow upon the core is a very ordinary mechanical idea. Thus every element claimed by Dodds in the claims relied on of his patent was old in the art, and, if there was not in any single prior patent an exact anticipation of his combination of them, there is nothing in the combination exceeding mechanical skill. Bullock's patents, though unused and uncited in the Patent Office against those of Dodds and of Barrett and Robichaux, are part of the prior art. Ignorance of them may acquit the new patentees of piracy, but does not make them first inventors.

Judgment affirmed.